643 So.2d 617 (1994)
Patrick Joseph IMHOF, Jr., Petitioner,
v.
NATIONWIDE MUTUAL INSURANCE CO., Respondent.
No. 81688.
Supreme Court of Florida.
May 12, 1994.
Rehearing Denied September 8, 1994.
Thomas R. Jenkins, Bozeman, Jenkins & Matthews, Pensacola, for petitioner.
George A. Vaka, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, and Jeffrey A. Cramer, Law Offices of Jeffrey A. Cramer, P.A., Pensacola, for respondent.
HARDING, Justice.
We have for review Imhof v. Nationwide Mutual Insurance Co., 614 So.2d 622 (Fla. 1st DCA 1993), where the district court certified this question of great public importance:
IS AN ACTION FOR BAD-FAITH DAMAGES PURSUANT TO SECTION 624.155(1)(B)(1), FLORIDA STATUTES, BARRED BY BLANCHARD v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, 575 So.2d 1289 (Fla. 1991), WHERE THE COMPLAINT FAILS TO ALLEGE THAT THERE HAD BEEN A DETERMINATION OF THE EXTENT OF APPELLANT'S DAMAGES AS A RESULT OF THE UNINSURED TORTFEASOR'S NEGLIGENCE?
We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. We answer the certified question in the affirmative. We approve the First District Court's opinion to the extent that it requires a complaint for bad faith to allege that there had been a determination of damages.[1]
Patrick Joseph Imhof, Jr. was injured in an automobile accident with an underinsured motorist on July 26, 1987. Imhof, with the approval of his insurer, Nationwide Mutual Insurance Company, settled with the tortfeasor for the tortfeasor's policy limits of $10,000. On January 25, 1989, Imhof made a claim against Nationwide's underinsured/uninsured coverage and tried to settle. He alleges in his complaint that Nationwide failed to respond. On March 10, 1989, Imhof filed a notice of insurer violation under section 624.155, Florida Statutes (Supp. 1988).[2] *618 In the notice Imhof said that he had offered to settle for the policy limits of $200,000 and had been ignored, that he had later renewed the offer on February 21, 1989, and that Nationwide had failed to acknowledge the arbitration provisions of the policy.[3] Imhof's counsel said during oral argument that Nationwide did not respond to the notice of violation during the sixty-day period provided by section 624.155(2)(a).[4] Imhof filed a complaint on June 7, 1990, alleging bad faith on the part of Nationwide. The complaint did not allege that there had been a determination of the extent of Imhof's damages.[5] The trial court dismissed the complaint with prejudice on December 11, 1990, for failure to state a cause of action.
On appeal, the First District Court affirmed, finding that the complaint did not state a cause of action because it did not allege that there had been a determination of the extent of Imhof's damages. The court found that this was a requirement under Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So.2d 1289 (Fla. 1991), to bring an action for insurer bad faith. Imhof, 614 So.2d at 624. However, the court certified the question of whether a failure to allege that there has been a determination of damages barred an action for bad-faith damages under section 624.155(1)(b)1. Id. at 624-25. We find that we answered the question presented in Blanchard and again answer in the affirmative.
In Blanchard we held that "[a]bsent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle." 575 So.2d at 1291. In the instant case, Imhof failed to allege in his complaint that a determination of his damages had been made. Thus, the trial court correctly dismissed the complaint for failure to state a cause of action.
Neither Blanchard nor section 624.155(2)(b) requires the allegation of a specific amount of damages. Thus, if the First District Court's certified question asked whether a complaint must allege the specific amount of damages determined, we would answer that question in the negative. It follows that there is no need to allege an award exceeding the policy limits to bring an action for insurer bad faith.
What the statute does require is that the insurer make a good-faith effort to settle claims. Section 624.155(1)(b)1 allows a person to bring a civil action when the insurer does not attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests." Id.
The law favors settlement of disputes and the avoidance of litigation. See, e.g., DeWitt v. Miami Transit Co., 95 So.2d 898, 901 *619 (Fla. 1957). The pretrial settlement of a lawsuit is generally favored because it saves scarce judicial resources. In re Smith, 926 F.2d 1027, 1029 (11th Cir.1991). Section 624.155 follows longstanding public policy and promotes quick resolution of insurance claims.
In the instant case, the amount of the arbitration award shows that Imhof had a valid claim. Imhof thus had a legitimate interest in a speedy resolution of his claim. Because this case arose from the dismissal of a complaint, the record before us is necessarily sparse. Imhof alleges that when Nationwide did not respond to Imhof's attempts in early 1989 to settle the claim, Imhof filed a notice of insurer violation under section 624.155 on March 10, 1989. Imhof's complaint alleges that after he filed the notice, Nationwide "failed to pay the damages or correct the circumstances giving rise to the violation." The record does not reflect whether Nationwide responded in any way within the sixty-day period following the notice of violation. We note that when an insurer does not respond within sixty days, the insurer flouts the very purposes of section 624.155.
Although this Court held in Blanchard that a determination of damages is necessary to state an insurer bad-faith claim, section 624.155 also requires an insurer to respond within the sixty-day period to the notice of bad faith.[6] An insurer's failure to respond within the sixty-day period will create a presumption of bad faith sufficient to shift the burden to the insurer to show why it did not respond. An insurer may have good reason for not wanting to settle for the amount demanded, but we find it difficult to articulate a possible reason not to respond within sixty days.
To preclude a claim for bad faith when the insurer has failed to respond within sixty days would undermine the purpose of section 624.155 and allow insurers to escape liability simply by refusing to respond to a notice of violation. By not responding, an insurance company could insulate itself from a bad-faith claim, a result the Legislature surely did not intend. It must be emphasized that an insurer's mere act of responding does not necessarily bar a bad-faith claim.
An insurer has been found to have acted in bad faith when the disputed claim is determined not to be "fairly debatable." Reliance Ins. Co. v. Barile Excavating & Pipeline Co., 685 F. Supp. 839, 840 (M.D.Fla. 1988). Under Reliance, a claim is not "fairly debatable" only when there is no reasonable basis to deny policy benefits.
The damages recoverable by the insured in a first-party bad-faith action are those amounts that are the consequence of the insurer's bad faith. McLeod v. Continental Ins. Co., 591 So.2d 621, 626 (Fla. 1992). Those damages may include, but are not limited to, interest, court costs, and reasonable attorney's fees. Id.
Accordingly, we answer the certified question in the affirmative, and we approve the decision of the First District to the extent that a complaint for a bad-faith claim requires an allegation that there has been a determination of damages. We remand to allow Imhof to file an amended complaint, for a determination of whether Nationwide filed a response within sixty days following the notice of violation, and for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, SHAW and KOGAN, JJ., concur.
GRIMES, C.J., concurs with an opinion.
McDONALD, J., dissents with an opinion.
GRIMES, Chief Justice, concurring.
I write only to explain why Imhof should be permitted to amend his complaint to allege that he obtained a favorable arbitration award.
Nationwide originally moved to dismiss the complaint because there was no allegation *620 that Imhof had obtained an arbitration award in excess of the policy limits. Imhof did not contest the dismissal of the complaint without leave to amend because he could not allege that his award exceeded the policy limits. It is clear from the appellate briefs that the question of whether there had to be an arbitration award in excess of the policy limits continued to be the primary issue before the district court of appeal.
In the interim, however, this Court rendered its opinion in Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So.2d 1289 (Fla. 1991), in which we said that absent a determination of liability and damages on the part of the uninsured tortfeasor a cause of action could not exist for a bad faith failure to settle. Because of our holding in Blanchard, the district court of appeal affirmed the dismissal of the complaint on the basis that there was no allegation in the complaint that Imhof had obtained any award. Despite having disposed of the case on a basis other than that which was argued, the court denied Imhof's motion to be permitted to amend his complaint to allege a favorable award.
There has never been any doubt that Imhof obtained a favorable arbitration award. Both parties referred to it in their district court of appeal briefs. The absence of an allegation that Imhof had obtained an arbitration award which did not exceed the policy limits was never an issue in either the trial court or the district court of appeal. Under these circumstances, it is only fair to permit Imhof to amend his complaint.
McDONALD, Justice, dissenting.
I think it unnecessary to respond to the certified question. Imhof and Nationwide agreed in the contract between them to arbitrate any dispute on the amount of damages. Nationwide had a right to rely on this provision. Arbitration was accomplished and the amount awarded was within the coverage. Under these circumstances, the trial judge correctly dismissed Imhof's claim.
NOTES
[1] There is an exception to this requirement, which is discussed infra in this opinion.
[2] Section 624.155, Florida Statutes (Supp. 1988), provides in relevant part:

(1) Any person may bring a civil action against an insurer when such person is damaged: ...
(b) By the commission of any of the following acts by the insurer: ...
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests.
[3] Section 624.155(2)(b), Florida Statutes (Supp. 1988), provides that:

(b) The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:
1. The statutory provision, including the specific language of the statute, which the insurer allegedly violated.
2. The facts and circumstances giving rise to the violation.
3. The name of any individual involved in the violation.
4. Reference to specific policy language that is relevant to the violation, if any... .
5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.
[4] Section 624.155(2)(a), Florida Statutes (Supp. 1988), provides in relevant part:

As a condition precedent to bringing an action under this section, the department and the insurer must have been given 60 days' written notice of the violation.
[5] Imhof's counsel said during oral arguments that arbitration took place in March 1990, and Imhof was awarded $197,000. The parties agree that the award was reduced by approximately $30,000, which includes a reduction for Imhof's negligence and a setoff for the payment of $10,000 in the tortfeasor's liability limits.
[6] Section 624.155(2)(d), Florida Statutes (Supp. 1988), provides:

(d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected. See also supra note 4.