**ALLSTATE INSURANCE COMPANY,**
Plaintiff/Counter–Defendant,

v.

**Mary A. CLOHESSY and Liam Cohessy, a minor, Defendants/Counter-Plaintiffs.**

No. 97–1806–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 23, 1998.

George A. Vaka, John D. Russell, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Allstate Insurance Company, Plaintiff/Counter–Defendant.

Bill Wagner, Wagner, Vaughan & McLaughlin, Tampa, Robert I. Reardon, Jr., The Reardon Law Firm, P.C., New London, CT, for Defendants/Counter–Plaintiffs.

## *ORDER GRANTING PLAINTIFF ALLSTATE'S MOTION TO DISMISS DEFENDANT CLOHESSY'S COUNTERCLAIM FOR BAD FAITH*

KOVACHEVICH, Chief Judge.

This cause is before the Court on Plaintiff/Counter–Defendant's Motion to Dismiss the Counterclaim for Bad Faith, (Docket No. 29–30), and responses (Docket No. 32–33).

### BACKGROUND

The plaintiff/counter-defendant, Allstate Insurance Company, (hereinafter Allstate), is an Illinois corporation with offices located nationwide. The defendants/counter-plaintiffs, Mary A. Clohessy and John Patrick Clohessy, have lived in both Florida and Connecticut but are currently residing in Ireland. In September of 1992, John Patrick Clohessy entered into a contract with Allstate whereby Allstate issued a Florida automobile insurance policy.

In March of 1993, Mary Clohessy's son, and brother of Liam Clohessy, was struck by a motor vehicle, operated by Kenneth L. Bachelor, while crossing a street in New Haven, Connecticut. Both Mary Clohessy and her older son Liam were also crossing the street at the time the speeding vehicle's exterior side view mirror struck the back of Brendan Clohessy's head. Tragically, Brendan Clohessy died as a result of the injuries sustained in the accident.

A claim for uninsured motorist benefits was made by the Estate of Brendan Clohessy under the policy issued to John Patrick Clohessy. Shortly thereafter, Mary and Liam Clohessy also made claims for uninsured motorist coverage under John Patrick's policy. Their claims are predicated upon the emotional trauma and accompanying psychological stress sustained as a result of witnessing Brendan Clohessy's death. Neither Mary Clohessy nor Liam Clohessy, although present at the scene of the accident, suffered any direct physical harm.

Allstate, in claiming that the harm Liam and Mary Clohessy sustained arose out of the bodily injury and death of Brendan Clohessy, paid out $200,000.00—the per-person policy limit for all damages arising out of the serious injuries and death of Brendan Clohessy. Allstate subsequently filed a complaint seeking declaratory relief on July 22, 1997 with this Court in Tampa, Florida. The defendants/counter-plaintiffs, however, before receiving service of Allstate's complaint, but seven months after Allstate filed the instant complaint, filed their own complaint in the District of Connecticut. The appropriate motions to dismiss were filed; however, this Court denied Defendant's Motion to Dismiss on July 8, 1998. There is now currently before this Court Allstate's Motion to Dismiss Defendant/Counter–Plaintiffs' Counterclaim for Bad Faith pursuant to *Fla. Stat.* § 624.155(1)(B)(1).

### DISCUSSION

For the sake of clarity and precision, this Court will first present the various arguments proffered by both parties and will then examine each argument as to its merits. First, as the movant, Allstate claims the following:(1) because this Court is sitting in diversity, the substantive law of Florida should apply pursuant to the *lex loci contractus* doctrine which holds that the substantive law of the place wherein the contract was executed controls; (2) that, because the law of Florida controls, the first-party right to assert a bad faith claim arises when, and only when, there is a conclusion of the underlying litigation for contractual uninsured motorist benefits—or, in other terms, only if the com-

plaint alleging bad faith specifically asserts that there has been a determination of the extent of damages as a result of the uninsured tortfeasor's negligence; and (3) that, irrespective of the first two contentions, the first-party right to assert a bad faith claim under the laws of Florida is purely statutory, that under the applicable Florida Statute affording such a right there exists a condition precedent, and that because defendants failed to satisfy such condition, this Court should dismiss the counterclaim.

Conversely, the defendants/counter-plaintiffs' main contentions can be summarized as follows: (1) the substantive law of Connecticut controls because that is the state with the more "significant relationship" to the underlying motor vehicle accident and in support of this assertion they offer the case of *State Farm Mutual Auto. Insurance Co.v. Olsen,* 406 So.2d 1109 (Fla.1981); (2) Allstate is guilty of not settling the defendant s/counterplaintiffs' claims in a good faith manner by failing to negotiate, arbitrate or mediate, or come to a determination of the extent of damages, and insisting that they wait until they had a ruling from this Court to do so, (3) Allstate's inaction compelled the defendants/counter-plaintiffs to initiate litigation in Connecticut to recover amounts due under the policy; and (4) that, even if Florida law applies, a bad faith claim need not be dismissed or stayed until resolution of the underlying contractual claim, essentially arguing for permissive joinder.

## I. CHOICE OF LAW

■ This Court obtained jurisdiction to entertain this case pursuant to diversity of citizenship and as such, we are bound to apply the substantive law of the state in which we are located. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Keller v. Miami Herald Publ'g Co.,* 778 F.2d 711, 714 (11th Cir.1985). In order to rule on this motion to dismiss, then, we must determine what the law of the state of Florida is regarding the issue of first-party bad faith claims; this question necessary entails determining whether a Florida court would apply Florida law or

Connecticut law to this counterclaim for bad faith. In brief, this Court believes that the law of Florida regarding this first-party bad faith counterclaim, founded within the somewhat ancient, but nonetheless, well-reasoned *lex loci contractus* rule, is the controlling law here.[1] The rule holds that the substantive law of the state in which the contract was executed or made, i.e., the place wherein the last step necessary is taken to create the formation of a contract, is the law that governs the said contract.

The Clohessys argue against applying Florida law and cite *Lumbermens Mutual Casualty Co. v. August,* 530 So.2d 293, 295 n. 3 (Fla.1988), insisting that the circumstances of this case warrant the need for applying the "significant relationship [to the accident]" test—meaning this Court should apply Connecticut law. In *August,* the Florida Supreme Court held that the *lex loci contractus* rule should be used to determine the choice of law for interpretation of provisions of uninsured motorist clauses in automobile insurance policies. *See August,* 530 So.2d at 295; *see also Sturiano v. Brooks,* 523 So.2d 1126, 1129–30 (Fla.1988). The Court noted an exception to this rule, however, in that "issues relating to the right of the insured to recover from the insurer that depend on the insurer's right against the uninsured motorist/tortfeasor, however, are determined according to the law of the state which has the most 'significant relationship' to the accident." *August,* 530 So.2d 293, 295 n. 3 (citing *State Farm Mutual Auto. Ins. Co. v. Olsen,* 406 So.2d 1109 (Fla.1981)). Thus, the Clohessys argue that because the accident occurred in Connecticut, wherein the uninsured motorist/tortfeasor was a Connecticut resident, and that because the Clohessy's were living in Connecticut at the time, that Connecticut qualifies as the state holding the most significant relationship to the accident. Under this theory, this Court would need to look to Connecticut law to resolve this motion to dismiss.

The Clohessys' argument would be correct and on-point if this Court were entertaining a

1. For a detailed and comprehensive review of Florida's choice of law rules, as well as a detailed history of the case law in which these rules developed, see *Shapiro v. Associated Int'l Ins. Co.,* 899 F.2d 1116, 1118–22 (11th Cir.1990).

personal injury suit, such as a claim for negligence or intentional infliction of emotional distress. In that instance, it would be clear that the Clohessy's right to recover from the uninsured motorist/driver would depend on their rights and relationship to the driver, etc. It would also be clear that under such a suit, the circumstances and events arising in this case would be closely analogous to those arising in the *Olsen* case; thus, this Court would feel compelled to apply the law espoused in *Olsen*, that being that the law of the state that had the most significant relationship to the accident is the appropriate test to determine the applicable body of law. See *Olsen*, 406 So.2d at 1110 (abandoning the historic *lex loci delicti* rule in favor of the Restatement (Second) of Conflict of Laws' "significant relationship" test).

Here, however, this Court can look no further than the four corners of the complaint, and the complaint is one filed by Allstate for the sole purpose of requesting declaratory relief—it is essentially asking this Court to interpret the policy and the right and obligations arising under such policy. This is purely an action sounding in contract, not one arising in tort wherein rights and duties from person to person are integral to the action—as the exception delineated in the *August* case so entails. Additionally, the bad faith counterclaim is essentially asking this court to find that Allstate has breached its obligations and duties under the policy. Such a finding or analysis by this Court necessarily involves interpreting the provisions of the contract as well as what actions or inactions on behalf of Allstate constitute grounds for a bad faith finding.

It does not, however, depend on the rights of the insured, the Clohessys, against the uninsured motorist/driver, Kenneth Bachelor. As such, this Court believes that the Florida courts are clear that the *lex loci contractus* rule applies. For example, in *Sturiano v. Brooks*, 523 So.2d 1126 (Fla.1988), a question was certified to the Supreme Court asking "[d]oes the *lex loci contractus* rule govern the rights and liabilities of the parties in determining the applicable law on an issue of insurance coverage, precluding consideration

by the Florida courts of other relevant factors such as the significant relationship between Florida and the parties/and or the transaction?" *Id.* at 1128–29. The Florida Supreme Court answered in the affirmative, limiting the answer to automobile insurance contracts alone. *Id.* at 1129. Consequently, the *lex loci contractus* rule—holding that the law of the state wherein the contract was executed applies to contractual interpretations—mandates that we apply Florida law to this motion because the contract for automobile insurance between Allstate and the Clohessys was executed in the state of Florida.

Additionally, in support of our decision to apply Florida law to this bad faith counterclaim, we note that traditionally, the Florida courts have applied the law of the state where the contract was executed in assessing the rights and obligations of a party under a contract. *See Goodman v. Olsen*, 305 So.2d 753, 755 (Fla.1974); *Brown v. Case*, 80 Fla. 703, 86 So. 684, 685 (Fla.1920); *Jemco, Inc. v. United Parcel Serv.*, 400 So.2d 499, 500 (Fla. 3rd DCA 1981). Thus, in addition to our aforementioned reasoning, the traditional choice of law rule employed by the Florida courts fortifies our decision to apply Florida law in this case. That being said, we will now examine Florida law with respect to first-party bad faith claims.

## II. Florida's Statutory Right to Assert A First–Party Bad–Faith Claim

 Under the laws of Florida, a first-party's ability to bring a bad-faith claim against an insurance company is a statutory right.[2] It is afforded pursuant to *Fla. Stat.* 624.155, *et seq.* This first-party bad faith action allows for an insured to seek damages against the insurance company for refusing to settle any and all claims accruing directly to its own insured. *See Talat Enters., Inc. v. Aetna Life & Cas.*, 952 F.Supp. 773, 776–77 (M.D.Fla.1996).

In their motion to dismiss, Allstate maintains that there must be a conclusion or a resolution of damages against the uninsured motorist carrier before the statutory right to assert bad faith accrues. Allstate cites the

---

**2.** Under the laws of Florida, there is no recognized common law right to a first-party action for bad faith. *See, e.g., United Guaranty Residen-* *tial Ins. Co. of Iowa v. Alliance Mortgage Co.*, 644 F.Supp. 339 (M.D.Fla.1986).

case of *Blanchard v. State Farm Mutual Automobile Insurance Co.*, 575 So.2d 1289 (Fla.1991), wherein the Florida Supreme Court was again answering a certified question—this time, the question was certified from the Eleventh Circuit. The question at issue was "[d]oes an insured's claim against an uninsured motorist carrier under section 624.155(1)(b)(1), Florida Statutes, for allegedly failing to settle the uninsured motorist claim in good faith accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits?" *Id.* at 1289. The Florida Supreme Court answered the question in the negative, thereby creating the need for there to be some type of conclusion of the underlying litigation of the contractual benefits *before* a claim alleging bad faith can accrue.

Moreover, several Florida courts have interpreted this "conclusion" to require that a complaint asserting bad faith must allege or incorporate some determination of the underlying damages. *See, e.g., Imhof v. Nationwide Mutual Ins. Co.*, 643 So.2d 617, (Fla.1994)(answering, in the affirmative, the certified question "[i]s an action for bad-faith damages pursuant to section 624.155(1)(B)(1), Florida Statutes, barred by *Blanchard v. State Farm Mutual Automobile Insurance Company*, 575 So.2d 1289 (Fla.1991), where the complaint fails to allege that there had been a determination of the extent of appellant's damages as a result of the tortfeasor's negligence?"); *see also Talat Enters.*, 952 F.Supp. at 777.

However, in *Imhof*, the Florida Supreme Court did not condition that the damages be determined by litigation, nor did they require that the movant plead a specific amount of damages. *See Imhof*, 643 So.2d at 617–18; *Brookins v. Goodson*, 640 So.2d 110 (Fla. 4th DCA 1994) (noting that neither the Florida Supreme Court in *Blanchard* or in *Imhof*, nor the bad faith statute "imposes a requirement of a prior judgment as a condition precedent to a bad faith claim"). In *Imhof*, the Florida Supreme Court was dealing with a set of facts unlike those at issue in the case presently before the court; the insured received an award of damages which was somewhat less then the policy limits. *See id.* This award amount was not held to be determinative of whether the insured could assert

the bad faith claim. In fact, the purpose underlying the requirement of alleging that there has been a determination of damages is to simply show that the insured "ha[s] a valid claim." *See id.* at 112.

■ Here, examining the details of this case, this Court notes that Allstate has paid the policy limits of $200,000.00 per person to settle the uninsured motorist claims. In *Brookins*, the Fourth District Court of Appeal of Florida expressly stated "we hold that the payment of the policy limits by the insurer here is the functional equivalent of an allegation that there has been a determination of the insured's damages." 640 So.2d at 112. The court further added that such a payout of policy limits satisfies the requirement that there be an allegation of a determination of the extent of damages. *Id.*

Because this Court finds this reasoning persuasive, and because Allstate has paid out the one person policy limits of $200,000.00, it necessarily follows that the defendants/counter-plaintiffs' counterclaim alleging bad faith cannot be dismissed on this basis. Allstate's payment of the policy limits of $200,000.00 serves as the "functional equivalent" of a determination of the insured's damages; it has the effect of providing a conclusion in relation to the underlying claim for benefits. Thus, the bad-faith counterclaim must not be dismissed on this basis.

### III. Condition Precedent

In an almost anti-climactic sense, however, this Court cannot overlook the fatal flaw within the defendants/counter-plaintiffs' counterclaim—the failure to comply with the condition precedent found in the very statute which afforded them the right to bring the counterclaim, that being *Fla. Stat.* § 624.155. Section (2)(a) under 624.155 reads, in pertinent part, "[a]s a condition precedent to bringing an action under this section, the department and the insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60–day time period shall not begin until a proper notice is filed." *Fla. Stat.* § 624.155(2)(a) (1998). Section (2)(b) goes on to read "[t]he notice shall be on a form provided by the department and shall state with specificity the following informa-

tion ...." *Id.* Moreover, the language and requirements pertaining to the condition precedent continues for another 10–12 paragraphs.

In the case at hand, the Clohessys have failed to notify this Court, in their allegations asserting the bad faith counterclaim, of any compliance with this condition precedent. The statute authorizing the right to bring a bad faith action clearly and expressly states that the asserting party *must* have filed a Notice of Insurer Violation with the Department of Insurance. The filing of the notice is crucial to the procedural integrity of an action under chapter 624.155. Among other things, the filing of the notice imposes duties, such as the continuing duty of the insurer to notify the department of any material change in the circumstances, or upon adjudication, the duty to report the details surrounding the disposition of the claim. The statute also indicates that no action shall lie, if within 60 days after the moving party files the notice, the "damages are paid or the circumstances giving rise to the violation are corrected." *Fla. Stat.* § 624.155(2)(b)(5)(d). Thus, as evidenced from the various duties arising thereunder, it is the *filing* of the Notice of Insurer Violation that forms a basis upon which to predicate a bad-faith claim.

The Florida legislature enacted a clear mandate in establishing the condition precedent. It is, without a doubt, a condition that must be satisfied in order for one to perfect the right to sue under the statute. *See Talat*, 952 F.Supp. at 776; *Rubio v. State Farm Fire & Casualty Co.*, 662 So.2d 956 (Fla. 3rd DCA 1995) (emphasizing the inflexible requirement of complying with the condition precedent under the bad-faith statute).

## CONCLUSION

Applying Florida law, this Court determined that the defendants/counter-plaintiffs' counterclaim survived despite the limitations that: (1) a first-party bad faith claim accrues only at the conclusion of the underlying litigation or arbitration of the policy benefits; and (2) is successfully invoked only when the asserting party pleads or alleges that there has been a determination of the extent of damages. Nonetheless, due to the failure of the defendants/counter-plaintiffs to comply with the specified condition precedent, i.e., the failure to file notice with the Florida Department of Insurance, it is imperative that this Court dismiss the defendant/counter-plaintiffs' counterclaim. Accordingly, it is

**ORDERED** that the Plaintiff/Counter–Defendant's Motion to Dismiss Defendants/Counter–Plaintiffs' Counterclaim (Docket No. 29–30) be **GRANTED** and the counterclaim be **DISMISSED.**