727 So.2d 400 (1999)
Heather Rockastle DOAN, Petitioner,
v.
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Respondent.
No. 98-1944.
District Court of Appeal of Florida, Third District.
March 10, 1999.
Parenti, Falk & Waas, and Gail Parenti, for petitioner.
Shutts & Bowen and John E. Meagher and Joey E. Schlosberg, for respondent.
*401 Before SCHWARTZ, C.J. and NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN and SORONDO, JJ.
SORONDO, J.
Heather Rockcastle Doan petitions this Court for a Writ of Certiorari to quash the trial court's Order which abated her statutory bad faith claims against John Hancock Mutual Life Insurance Co., pending resolution of her breach of contract claim to enforce the terms of her long-term disability insurance policy.
Doan was issued a disability insurance policy by John Hancock in 1987. In early 1995, she underwent a bilateral hip replacement. Prior to the surgery, she was a nurse manager at Duke University Medical Center in North Carolina. Doan submitted a claim for disability benefits to John Hancock which paid her benefits under the policy until she was able to work again. In June 1995, Doan moved to Coral Gables, Florida and began working at Cedars Medical Center as a nurse manager, earning approximately the same salary she earned as a nurse manager at Duke. Doan contended that she was entitled to continue receiving benefits under the policy because she was no longer able to perform the material duties of her "regular occupation." After determining that she was no longer totally disabled within the terms of the policy, John Hancock denied her further benefits.
After Doan began work as a nurse manager at Cedars, she underwent two additional surgeries. After the first surgery in November 1996, she submitted another claim to John Hancock. John Hancock paid her benefits until she returned to work at Cedars in February 1997. Her next surgery was in June 1997. John Hancock has paid her benefits under the policy since then.
As a result of John Hancock's denial of further benefits to Doan during the time she was released back to work and working as a nurse manager at Cedars in 1995, she sued John Hancock for first-party insurance benefits arising under the disability insurance policy. She subsequently sought leave to amend her complaint to add additional breach of contract counts, based on the subsequent surgeries and to add statutory bad-faith claims against John Hancock. The lower court granted her motion for leave to amend, over John Hancock's objection. John Hancock then moved to dismiss or abate Doan's bad-faith counts pending resolution of the underlying coverage dispute. The lower court entered an Order abating the bad-faith claims until the resolution of the underlying coverage dispute. This petition followed.
Doan argues that abating her statutory bad faith claims constituted a departure from the essential requirements of law in that the trial court failed to follow this Court's decision in Rubio v. State Farm Fire & Cas. Co., 662 So.2d 956 (Fla. 3d DCA 1995). She suggests that the breach of contract and "bad faith" claims in this case are "inextricably intertwined," and that the order of abatement permits Doan to pursue only half a remedy, even though she is legally entitled to pursue a complete remedy for all her damages under section 624.155, Florida Statutes (1995).
John Hancock responds, first, that the trial court's decision is not in conflict with Rubio. Next, the insurer posits that this Court's decision in Rubio is in conflict with other cases from this district as well as decisions of the Florida Supreme Court.
We begin our analysis by reviewing this Court's decision in Schimmel v. Aetna Cas. & Sur. Co., 506 So.2d 1162 (Fla. 3d DCA 1987), disapproved by Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289 (Fla.1991). In Schimmel, plaintiffs purchased insurance from Aetna to cover household goods which were to be shipped from Tampa to Miami by common carrier. Following delivery, plaintiffs discovered that many of their possessions had been damaged in transit. They filed a claim against their insurer for damages to their personal property. The insurer refused to pay the claim so the plaintiffs filed a lawsuit for breach of contract. At a non-jury trial the trial court ruled in favor of plaintiffs and awarded compensatory damages, attorney's fees and costs.
*402 Plaintiffs then filed a law suit against Aetna for failure to settle in good faith in violation of section 624.155(1)(b)(1), Florida Statutes (1983). Aetna moved for summary judgment which the trial court granted on the grounds that the doctrine against impermissibly splitting causes of action barred the action as a matter of law. This Court affirmed the trial court's ruling and held that because the bad faith claim could have been brought with the breach of contract claim, it could have and should have been brought with the underlying coverage action. Schimmel, 506 So.2d at 1165. The significance of this case to our analysis is discussed below.
In Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289 (Fla.1991), the plaintiff was permanently injured when he was struck by an automobile driven by an uninsured motorist. His policy with State Farm included uninsured motorist coverage in the amount of $200,000. When State Farm allegedly refused to make a good faith offer to settle, plaintiff filed suit against the original tortfeasor for negligence and sought to compel the insurer to perform under the policy. Plaintiff secured a verdict of $396,990 and a judgment was entered for the full amount against the tortfeasor and for the $200,000 policy limit against State Farm.
Plaintiffs then filed a statutory bad faith action in the United States District Court under the provisions of section 624.155, Florida Statutes (1987). The federal court granted State Farm's motion to dismiss the bad faith claim on the grounds that the plaintiffs had split their cause of action by not alleging the bad faith claim in the original suit. On appeal, the Eleventh Circuit Court of Appeals certified three questions to the Florida Supreme Court. The Court answered only one:
Does an Insured's claim against an uninsured carrier under section 624.155(1)(b)(1)., Florida Statutes, for allegedly failing to settle the uninsured motorist claim in good faith accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits?
Id. at 1290. The Court answered this question in the negative and held that "[a]bsent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for bad faith failure to settle." Id. at 1291. See also Imhof v. Nationwide Mut. Ins. Co., 643 So.2d 617 (Fla. 1994). Since Blanchard, this Court has decided a number of cases consistently therewith. See Liberty Mut. Ins. Co. v. Cook, 696 So.2d 497 (Fla. 3d DCA 1997)(homeowner's insurance claim); Utah Home Fire Ins. Co. v. Navarro, 642 So.2d 1200 (Fla. 3d DCA 1994)(homeowner's insurance claim); Sivilla v. State Farm Mut. Auto. Ins. Co., 614 So.2d 553 (Fla. 3d DCA 1993)(automobile collision insurance claim); State Farm Mut. Auto. Ins. Co. v. Oteiza, 595 So.2d 1094 (Fla. 3d DCA 1992).
In Rubio, the plaintiffs' home was burglarized and personal property was stolen. The allegation was made that the insurer unreasonably failed to conclude its investigation and satisfy their claim. Suit was filed some eight months after the incident. Their first complaint was dismissed with leave to amend. Plaintiffs then filed a three count amended complaint: Count 1breach of contract; Count 2intentional infliction of emotional distress; and Count 3tortious failure to pay. The trial court dismissed counts 2 and 3 based upon the economic loss rule. This Court reversed the order of dismissal and further concluded that the statutory bad faith claim could be tried together with the underlying coverage claim. Rubio, 662 So.2d at 959.
The Rubio decision was apparently based on the dual conclusions that Blanchard and Imhof were limited to uninsured motorist cases and that because bad faith claims no longer infringed upon the attorney-client and/or work-product privileges, there was no reason to abate them until after resolution of the coverage issue. We address each in turn.
The suggestion that the Supreme Court's decision in Blanchard is limited to uninsured motorist claims is not supported by a close reading of that opinion. Indeed, the Court's language suggests exactly the opposite:
If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim. Thus, *403 an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue. It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits.
Blanchard, 575 So.2d at 1291 (emphasis added). The highlighted language clearly expresses a general concept, independent of the issue in the case. This becomes clear when reading the subsequent sentence which extrapolates from the general principle to the specific issue confronting the Court. We further note that Blanchard specifically observed that this Court's decision in Schimmel expressed the "contrary view," and specifically found it to have been erroneously decided. Id. Had the Supreme Court intended to limit its holding in Blanchard to uninsured motorist cases, it would not have gone out of its way to disapprove Schimmel which was a household goods insurance case. Finally, we note that this Court has found Blanchard to apply beyond the context of uninsured motorist insurance to homeowner's insurance before Rubio, in Navarro, and after Rubio, in Cook.
Rubio also found that because bad faith claims no longer infringed upon the attorney-client and/or work product privileges, see Kujawa v. Manhattan Nat'l Life Ins. Co., 541 So.2d 1168 (Fla.1989),[1] there was no reason why they could not be tried along with the underlying coverage issue. Rubio, 662 So.2d at 958-59. This conclusion was reached by the panel after an analysis of cases which were decided before Blanchard, and which are inapposite to the issue squarely addressed and resolved by Blanchard.
We deny the Petition for Writ of Certiorari and recede from our decision in Rubio.
NOTES
[1] See also Allstate Ins. Co. v. Melendez, 550 So.2d 156 (Fla. 5th DCA 1989); State Farm Mut. Auto. Ins. Co. v. Kelly, 533 So.2d 787 (Fla. 4th DCA 1988).