Otto PASTOR, Plaintiff,

v.

The UNION CENTRAL LIFE
INSURANCE CO.,
Defendant.

No. 01–3993–Civ.

United States District Court,
S.D. Florida.

Feb. 6, 2002.

Brenton N. Ver Ploeg, Stephen A. Marino, Jr., Ver Ploeg & Lympkin, Miami, FL, for plaintiff.

Keith D. Post, Gallwey, Gillman, Curtis, Vento & Horn, P.A., Miami, FL, for defendant.

### ORDER GRANTING MOTION TO DISMISS

GOLD, District Judge.

**THIS CAUSE** is before the court upon defendant Union Central Life Insurance Co.'s ("Union Central") motion to dismiss (DE #5). The plaintiff, Otto Pastor ("Pastor"), has filed a one-count complaint against Union Central for statutory bad faith under Fla.Stat. § 624.155. The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. According to Union Central, Pastor's complaint must be dismissed in its entirety because Florida law does not apply to this case, and Pastor seeks relief only under a Florida statute. Alternatively, Union Central argues that Pastor's complaint must be dismissed in whole or in part for three reasons: (1) the complaint fails to state a claim for punitive damages, (2) a claim for bad faith litigation cannot be sustained, and (3) the Florida statute at issue is void for vagueness. After carefully considering the parties' arguments and the applicable case law, the court grants Union Central's motion to dismiss.

### Standard for Motion to Dismiss

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Svcs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v.*

*Reyes,* 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

### The Facts[1]

In 1979 and 1981, Pastor purchased two disability insurance policies from Union Central, his employer at the time. On July 14, 1993, Pastor underwent curative surgery for prostate cancer. Pastor was hospitalized for an extended period after the surgery due to post-surgical complications. In November of 1993, Pastor began to suffer from depression. This condition was exacerbated by the death of his brother and mother while Pastor continued to recover from his surgery. By the time Pastor recovered from the surgery in January of 1994, his depression had reached the stage where it rendered him incapable of engaging in the sort of personal contact necessary to perform the duties of his occupation as an insurance salesman for Union Central. *See* Compl. at ¶ 15. Pastor's psychiatrist prepared an attending physician's statement for Union Central to this effect.

From the onset of Pastor's cancer and throughout his affliction with depression, Union Central allegedly adopted a hostile and adversarial position to Pastor's claim for benefits. *See* Compl. at ¶ 16. According to Pastor, even before he underwent the medical examinations ordered by Union Central, the insurance company claimed that Pastor was not disabled, and it attempted to build a case to terminate Pastor's benefits, rather than embarking upon a legitimate investigation. *See* Compl. at ¶ 19. For example, in an effort to buttress its premature determination that Pastor was not disabled, Union Central hired The Psych Team, whose employees possessed no medical education or background, to allegedly create evidence to justify denial of Pastor's claim. *See* Compl. at ¶ 20. The Psych Team conducted covert surveillance of Pastor and suspended its surveillance when it began to collect evidence that actually supported Pastor's claim. *See* Compl. at ¶ 22. Union Central also accused Pastor of selling insurance while concealing sales by using his daughter, a licensed insurance broker, as a front. *See* Compl. at ¶ 23. Additionally, Union Central allegedly discarded some of its records regarding its investigation of Pastor's claim. *See* Compl. at ¶ 23.

Union Central terminated Pastor's claim payments on February 13, 1995, retroactive to January 15, 1995. It also terminated Pastor's agency contract for failing to return to work. From this point forward, Union Central refused to consider additional evidence regarding Pastor's claim.

On August 23, 1995, Pastor brought suit against Union Central in Dade County Circuit Court. Throughout the litigation, Union Central allegedly employed tactics designed to maximize the expense and pressure on Pastor and his counsel by demanding large volumes of documents from Pastor and third parties. *See* Compl. at ¶ 27. Union Central also accused Pastor, his friends, and his family of insurance fraud.

The trial for Pastor's state action lasted three days. On January 15, 1995, Pastor obtained a judgment in Dade County Circuit Court against Union Central, declaring him disabled as of January 15, 1995,

---

1. The following facts are derived from the allegations contained in Pastor's complaint.

and continuously from that date through the time of trial. Union Central paid the judgment in August of 2001. Pastor claims that this six-year period of litigation and Union Central's conduct throughout the course of the investigation and litigation constitutes a violation by Union Central of Florida's law outlawing an insurance company's failure to settle a claim in good faith.

### Analysis

The central issue in this motion to dismiss is the applicability of Fla.Stat. § 624.155. This provision creates a statutory civil remedy for any person against an insurer:

> when such a person is damaged:
>
> . . . .
>
> (b) By the commission of any of the following acts by the insurer:
>
> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;
>
> 2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or
>
> 3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

Fla.Stat. § 624.155(b). Union Central utilizes a traditional choice of law analysis in support of its position that the Florida statute does not apply to this case, which involves an insurance contract that was executed in New Jersey. Pastor contends that a choice of law analysis based on Florida common law is inappropriate because the Florida legislature has included a choice of law directive in the statute.

Although this case presents a close question, the court agrees with Union Central that traditional choice of law analysis is appropriate and that Florida law does not apply to this case.

### I. Choice of Law: General Principles

Federal jurisdiction in this case is based on diversity of citizenship, and Florida is the forum state. As a federal court exercising diversity jurisdiction, this court must examine the law of the forum state, which includes its choice of law rules, to determine whether Fla.Stat. § 624.155 is applicable here. *See McMahan v. Toto,* 256 F.3d 1120, 1131 (11th Cir.2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)); *Fioretti v. Mass. Gen. Life Ins. Co.,* 53 F.3d 1228, 1235 (11th Cir. 1995). If the Florida Supreme Court has not issued a definitive answer on an issue before this court, it must adhere to the decisions of the state's intermediate appellate courts. *See Fioretti,* 53 F.3d at 1236 n. 28 (citations omitted).

### II. The Doctrine of *Lex Loci Contractus*

■ If this case had involved Pastor's claim against Union Central for recovery of his disability benefits under the insurance contracts (the issue litigation in the state court), it is clear that New Jersey law would govern the controversy. This is because, when resolving conflict of laws issues in contract actions, the Florida Supreme Court unambiguously has indicated its intent to adhere to the traditional rule of *lex loci contractus.* *See Sturiano v. Brooks,* 523 So.2d 1126, 1129 (holding that *lex loci contractus* doctrine governs disputes involving automobile insurance) (Fla. 1988); *Goodman v. Olsen,* 305 So.2d 753, 755 (Fla.1974) (same, for contracts in general); *see also Fioretti,* 53 F.3d at 1235 (discussing *lex loci contractus* rule in Florida). Under this doctrine, absent a con-

tractual choice of law provision, a contract is governed by the law of the state in which the contract is made, *i.e.*, where the last act necessary to complete the contract is done. *See Sturiano,* 523 So.2d at 1129 (discussing *lex loci contractus* doctrine); *Equitable Life Ass. Soc'y of the U.S.A. v. McRee,* 75 Fla. 257, 78 So. 22, 24 (1918) (same); *see also Fioretti,* 53 F.3d at 1235 (discussing *lex loci contractus* doctrine and stating that it applies to life insurance policies, as well as automobile insurance policies). Because the insurance contracts in this case were delivered to Pastor in New Jersey while he was a resident of that state, New Jersey law would govern a dispute regarding the terms of the contracts. *See Fioretti,* 53 F.3d at 1235 (finding that dispute over life insurance policies was governed by New Jersey's substantive insurance law where agreement was executed in New Jersey); *Bloch v. Berkshire Ins. Co.,* 585 So.2d 1137 (Fla. 3d DCA 1991) (finding that dispute over insurance contract was governed by New York law where contract was delivered to claim in New York, where he resided).

▮ The applicability of *lex loci contractus* to this case, however, is not automatic because a contractual claim for disability benefits is not at issue. Instead, Pastor has brought a claim against Union Central for the alleged violation of its duty to settle a claim under a contract in good faith. While Pastor contends that such a claim sounds in tort, Union Central contends that it sounds in contract. The Supreme Court of Florida resolved this issue in *Nationwide Mutual Insurance Co. v. McNulty,* 229 So.2d 585 (Fla.1969), where it stated that the nature of the cause of action against an insurer for a refusal to settle in good faith within the policy limits is *ex contractu,* rather than in tort. In

*McNulty,* an insured judgment debtor sought to recover against his insurer for excess of the judgment obtained by a third party. *Id.* at 585. The plaintiff based its complaint on negligence and common law bad faith refusal to settle.[2] *See id.* According to the Florida Supreme Court:

> The contractual duty of the insured to defend justifies an implication that the insurer will exercise ordinary care and good faith in so proceeding. Accordingly, when an insurer under such a policy contract undertakes to defend an action against the insured and becomes involved in negotiations for settlement, the law imposes the duty that it act therein in good faith. It follows that the cause of action for an 'excess,' where one arises from bad faith, is bottomed on the contract, and that the nature of an action thereon is ex contractu rather than in tort. *The fact that the proofs offered to establish an insurer's bad faith in this connection may include or consist of showing an act of negligence will not take the cause of action out of the contract category.*

*Id.* at 586 (emphasis added). *See also LaTorre v. Conn. Mut. Life Ins. Co.,* 38 F.3d 538, 540 (11th Cir.1994) ("Florida adheres to the traditional rule that the legal effects of terms of the insurance policy *and rights and obligations of persons insured thereunder* are to be determined by the law of the state where the policy was issued.") (emphasis added).

Like the insurer in *McNulty,* Union Central's contractual duty to pay Pastor disability proceeds arises out of the insurance contracts. Just as the insurer in *McNulty* had an implied duty from its contracts to defend its insureds in good faith, Union Central has an implied duty to

---

**2.** When *McNulty* was decided, the Florida legislature had not yet enacted Fla.Stat.

§ 624.155.

settle, investigate, and pay the insureds' claims in good faith.

Pastor contends that *McNulty* is inapplicable to this case because it involved a third party's common law claim for good faith, whereas this case involves a first party's statutory claim for good faith. Such an argument presents a distinction without a difference, for Fla.Stat. § 624.155 does nothing more than extend the common law remedy of third parties to insurance contracts to first parties. There is nothing to support Pastor's contention that common law and statutory good faith actions should be characterized differently simply because they are brought by different parties. Both types of actions are similar because they arise from an insurer's implied obligations under a contract. In fact, the language used in Fla.Stat. § 624.155(b)(1)–(3) to describe the insurer's statutory duties makes it clear that, as in common law third party claims, the good faith obligation in first party claims stems from an insurer's duties under the insurance contract—the duty to settle claims with due regard to an insured's interests; making payments to an insured as set forth in the coverage; and promptly settling claims when the obligation to settle is clear under the "insurance policy coverage". Because an action for statutory bad faith sounds in contract, not tort, the doctrine of *lex loci contractus* determines the applicable law in this case.

■ In *Allstate Insurance Co. v. Clohessy*, 32 F.Supp.2d 1328 (M.D.Fla.1998), a district court in the Middle District of Florida arrived at the same conclusion.[3] Like Pastor, the insured in *Clohessy*, filed a bad faith claim against his insurer pursuant to Fla.Stat. § 624.155. The court engaged in choice of law analysis under Florida law, held that the *lex loci contractus*

doctrine controlled, and found that, under that rule, Florida law governed the claim. The court rejected the argument that the first party statutory bad faith claim was akin to a tort suit. Instead, it stated, "[T]he bad faith counterclaim is essentially asking this court to find that [the insured] has breached its obligations and duties under the policy. Such a finding or analysis by this Court necessarily involves interpreting the provisions of the contract as well as what actions or inactions on behalf of [the insured] constitute grounds for a bad faith finding." *Id.* at 1331. According to the court, Florida law, and therefore Fla.Stat. § 624.155, applied under the *lex loci contractus* rule because the contract was executed in Florida. Here, the same rule compels the finding that New Jersey law applies because the insurance contract was executed in New Jersey. As such, Fla.Stat. § 624.155 does not govern Union Central's duties in this case.

■ In opposition to Union Central's motion to dismiss, Pastor contends that the above-cited decisions are irrelevant and that the court need not employ choice of law analysis because the Florida legislature has included a choice of law provision in the Insurance Code that is to govern all insurance companies conducting business in Florida. Section 624.11(1) of the Florida Statutes provides, "No person shall transact insurance in this state . . . without complying with the applicable provisions of this code." According to Pastor, this language indicates the legislature's intent to bind all insurers to every provision of the Insurance Code.

Pastor's argument is flawed in many respects. First, it is important to note that Fla.Stat. § 624.11(1) qualifies the governance of the Insurance Code with the

---

**3.** Neither the Florida Supreme Court nor the intermediate appellate courts have had an opportunity to decide whether Fla.Stat. § 624.155 sounds in tort or contract, or whether that provision applies to an insurance contract executed outside of Florida.

phrase "the applicable provisions of this code." Whether Fla.Stat. § 624.115 is applicable to this case is the question that the court is attempting to address in this choice of law analysis. If the result of a court's choice of law exercise is that Florida law applies, then Fla.Stat. § 624.115 will be "applicable" under § 624.11(1), and an insurer will have to comply with the Code. However, if the provision is not "applicable" because the law of another state controls, then the insurer will not have to comply with the Florida Insurance Code.

More importantly, Pastor's position ignores the principle that, in order for the legislature to abolish or limit a common law rule, such as *lex loci contractus*, it "must indicate such change clearly, or else the rule of common law stands." *Wal-Mart Stores, Inc. v. McDonald*, 676 So.2d 12, 17 (Fla. 1st DCA 1996). The court, therefore, must presume that a statute "was not intended to alter the common law other than by what was clearly and plainly specified in the statute." *Ady v. Am. Honda Fin. Corp.*, 675 So.2d 577, 581 (Fla. 1996). Section 624.11(1) does not "clearly and plainly specify" that the legislature intended to abrogate the common law *lex loci contractus* rule. In comparison, the legislature made such an intent clear in the statute at issue in *Sanchez v. Sanchez De Davila*, 547 So.2d 943 (Fla. 3d DCA 1989). In *Sanchez*, the court held that the statute under review codified the applicable choice of law rule because it stated, "The law of this state ... shall govern all aspects ... regardless of the citizenship, residence, location, or domicile of any other party." *Id.* at 945 (quoting Fla.Stat. § 655.55). Similarly, in *BDO Seidman, LLP v. British Car Auctions, Inc.*, 802 So.2d 366 (Fla. 4th DCA 2001), the abrogation of the statutory common law rule was clear, where the statute stated that the provision at issue applied to "any civil action for damages filed in the courts of this

state." *Id.* at 367–68 (quoting Fla.Stat. § 768.79(1)).

If the Florida legislature had intended to abandon the *lex loci contractus* rule for insurance disputes, it could have done so by stating that the Code would apply in "any civil action for damages filed in the courts of this state," as it did in *BDO Seidman*, or that the "law of this state" would govern all aspects of insurance, regardless of the place of the execution of the contract, as it did in *Sanchez*. Absent such a clear expression, this court will not construe Fla.Stat. § 624.11(1) as an abrogation of the common law choice of law rules.

Finally, the statutory interpretation proposed by Pastor would be in derogation of the common law policies surrounding the *lex loci contractus* rule and, therefore, must be strictly construed. *Cf. Talat Enterps., Inc. v. Aetna Cas. & Sur. Co.*, 753 So.2d 1278, 1283 (Fla.2000) (stating that Fla.Stat. § 624.155 must be strictly construed because it is in derogation of common law). The fundamental policy concern of Florida's longstanding *lex loci contractus* rule in insurance cases is that parties should not be permitted to modify contracts simply by moving to another state. *See Sturiano v. Brooks*, 523 So.2d 1126, 1129–30 (Fla.1988). As the Florida Supreme Court has explained:

> Parties have a right to know what the agreement they have executed provides. To allow one party to modify the contract simply by moving to another state would substantially restrict the power to enter into valid, binding, and stable contracts. There can be no doubt that the parties to insurance contracts bargained and paid for the provisions in the agreement, including those provisions that apply the statutory law of that state.

*Id.* That is, when Pastor and Union Central executed their contracts in New Jer-

sey, they expected that New Jersey law would control. At the time they entered into these agreements, Union Central could not have anticipated that it might one day be bound by Florida's statutory good faith obligation. Application of the *lex loci contractus* rule gives certainty to the question of what law will govern in the event that an insurer fails to carry out the implied contractual obligation of good faith. Otherwise, under Pastor's interpretation of Florida's Insurance Code, an insured conceivably could bring a bad faith claim under the law of any state having a provision similar to Fla.Stat. § 624.11(1) and where the insurer transacts business. For example, an insurer who enters into a contract with an insured in California and who transacts business in California, Florida, New York, and New Jersey, potentially can be liable to the insured for a bad faith violation under the law of all four states if each of these states has enacted a provision like Fla.Stat. § 624.11(1), which provides, "No person shall transact insurance in this state ... without complying with the applicable provisions of this code".

Additionally, if this court were to adopt Pastor's position, the district court's application of state law would become unnecessarily complicated in cases such as this. Although the two questions are intimately related, disputes involving the payment of claims potentially would be determined by the law of the state where the contract was executed (here, New Jersey), while the bad faith claim would be determined by the law of another state (here, Florida). Florida's rule of *lex loci contractus* seeks to avoid such a fragmented result. *Cf. McMahan v. Toto,* 256 F.3d 1120, 1133 (11th Cir.2001) (stating that Supreme Court of Florida would not apply Florida substantive law to one aspect of a case that was otherwise

governed by substantive law of another state).

## III. Conclusion

Under the doctrine of *lex loci contractus,* which must be applied here pursuant to Florida's choice of law rules, New Jersey governs Pastor's bad faith claim. In his complaint, Pastor seeks relief only under Fla.Stat. § 624.115. Because Florida law is inapplicable to this dispute, Pastor's complaint must be dismissed for failure to state a claim.[4] Accordingly, it is hereby:

**ORDERED AND ADJUDGED THAT:**

1. Union Central's motion to dismiss (DE # 5) is GRANTED WITHOUT PREJUDICE.

2. By February 25, 2002, Pastor may file an amended complaint in compliance with this order. Failure to file a timely complaint will result in a dismissal of this case.

---

4. Because the choice of law issue is dispositive of Union Central's motion, the court does not address Union Central's remaining arguments in support of dismissal.