# SANDALWOOD ESTATES HOME-OWNER'S ASSOCIATION, INC., Plaintiff,

v.

# EMPIRE INDEMNITY INSURANCE COMPANY, and Zurich American Insurance Company, Defendants.

## Case No. 09–80787–CIV.

United States District Court,

S.D. Florida.

Oct. 20, 2009.

Gary J. Guzzi and Mark S. Shapiro, Akerman Senterfitt, Miami, FL, for defendants.

Stephen A. Marino and Danya Pincavage, Ver Ploeg & Lumpkin, Miami, FL, for plaintiff.

### ORDER GRANTING DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS AMENDED COMPLAINT

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court upon defendant Zurich American Insur-

ance Company's ("Zurich") Motion to Dismiss the Amended Complaint **[DE 9]** filed on August 28, 2009. Plaintiff Sandalwood Estates Homeowner's Association, Inc. ("Sandalwood") filed a response **[DE 20]** on September 25, 2009. Zurich replied **[DE 21]** on October 5, 2009. This matter is ripe for adjudication.

## I. Background

This case centers on an insurance claim dispute between Sandalwood and its insurance company, Empire Indemnity ("Empire"). Sandalwood made claims against its insurance policy issued by Empire after Sandalwood's insured property was damaged during Hurricanes Frances and Wilma. The claims proceeded to an appraisal. Sandalwood alleges that both Empire and its parent company, Zurich, acted in bad faith in processing Sandalwood's claims thereby violating Florida Statute §§ 624.155(1)(a)(1), 624.155(1)(b)(1) and 626.9541(1)(i)(3), all of which prohibit bad faith actions in claim settlement by insurers. In its Amended Complaint, Sandalwood alleges that Empire is a subsidiary of Zurich, that Zurich writes insurance policies through its subsidiaries, and that Zurich controls Empire's claims handling and decisions because it employs all of Empire's claims handling personnel. Sandalwood alleges that by issuing a policy to Sandalwood, through Empire, Zurich is required to comply with the statutory duties of Florida Statute § 624.155 as well as the Unfair Claim Settlement Practices Act (Fla.Stat. § 626.9541). Sandalwood alleges that Zurich's bad faith handling of Sandalwood's claims was part of an overall business practice of refusing to fully pay large claims.

## II. Legal Standard for Motion to Dismiss

■ Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## III. Discussion

■ Zurich makes two arguments to support its contention that Sandalwood has failed to state a claim for a statutory bad faith claim against Zurich. First, pointing to the policies at issue, Zurich argues that a bad faith cause of action against Zurich cannot lie because a claim for bad faith requires an underlying contractual relationship and the policies themselves show that no contractual relationship existed be-

tween Zurich and Sandalwood.[1] Second, Zurich argues that Sandalwood has failed to satisfy the statutory prerequisites for asserting a bad faith claim under Fla. Stat. § 624.155. Zurich contends that in order to bring a claim for bad faith (1) there must have been an underlying first-party action for insurance benefits against the *insurer,* which was resolved in favor of the insured; and (2) the insured must have filed a Civil Remedy Notice ("CRN") and the insured must have given the insurer 60 days to cure. Regarding the first condition precedent, Zurich argues that Empire—and not Zurich—participated in the underlying appraisal proceedings and Empire obtained an award against Empire alone. As to the second condition precedent, Zurich argues that based on the copy of the CRN attached to the Amended Complaint, Sandalwood filed a CRN against Empire and not against Zurich, thereby failing to perfect its right to sue Zurich.

In response, Sandalwood essentially argues that Sandalwood's contractual relationship with Empire should be imputed to Zurich because Zurich conducted Empire's operations and controlled Empire's claims handling and decisions as Zurich employs all of Empire's claims handling personnel. Further, Sandalwood argues that while it did not file a CRN directly against Zurich, Zurich was on-notice of its bad faith actions because the CRN was actually mailed to Zurich's corporate address. Therefore, Sandalwood argues that because Zurich controls Empire's claims handling process and this lawsuit stems from abuses relating that process, the Court should find that Zurich has sufficiently pled a cause of action for statutory bad faith.

Under Fla. Stat. § 624.155, any person may bring a civil against an insurer when such person is damaged by the insurer's violation of § 626.954(1)(i), which prohibits unfair settlement practices, or where the insurer: "(1) [n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests ... [or] (3)[e]xcept as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage." *Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co.,* 580 F.Supp.2d. 1294, 1298 (S.D.Fla.2008) (quoting Fla. Stat. § 624.155(1)(b)). Additionally, there are several conditions precedent that must be satisfied prior to bringing an action for bad faith. First, as the Florida Supreme Court clearly stated in *Blanchard v. State Farm Mut. Auto Ins.,* "an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue." 575 So.2d

---

1. Zurich points out that Sandalwood attached an incomplete copy of the relevant policies to its Amended Complaint. Zurich, therefore, filed two complete copies of the policies with its motion to dismiss. Zurich argues that the Court may consider the complete copies of the policies on a motion to dismiss without converting the motion to a motion for summary judgment if the documents are central to the plaintiff's claim, citing *Financial Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1283–84 (11th Cir.2007); *Brooks v. Blue Cross*

*and Blue Shield of Florida,* 116 F.3d 1364, 1369 (11th Cir.1997). The Court agrees. These policies are central to Sandalwood's bad faith claim as Sandalwood bases its claims on these policies and refers to them in its Amended Complaint, even attaching a portion of a policy thereto. Further, neither party objects to the authenticity of the policies. Therefore, the Court will consider the complete copies of the policies in determining whether to grant Zurich's motion to dismiss.

1289, 1291 (Fla.1991). Second, "[a]s a condition precedent to bringing an action under [§ 624.155], the department and the authorized insurer must have been given 60 days' written notice of the violation." *Heritage*, 580 F.Supp.2d. at 1298. The notice, or CRN, must specifically state:

1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.

2. The facts and circumstances giving rise to the violation.

3. The name of any individual involved in the violation.

4. Reference to specific policy language that is relevant to the violation, if any . . .

5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

*Id.* (quoting 624.155(3)(b)); *see also Talat Ents., Inc. v. Aetna Cas. and Sur. Co.*, 753 So.2d 1278, 1283 (Fla.2000) (finding that written notice is a condition precedent to bringing a bad faith claim under § 624.155(1)(a) or (b)). The CRN is "crucial to the procedural integrity" of a statutory bad faith claim. *Allstate Ins. Co. v. Clohessy*, 32 F.Supp.2d 1328, 1333 (M.D.Fla.1998).

The Court finds that the plaintiff has failed to state a cause of action for statutory bad faith against Zurich. The policies submitted with Zurich's motion to dismiss clearly show that no contractual relationship existed between Zurich and Sandalwood sufficient to support a cause. of action for bad faith. These policies show that Empire, not Zurich, issued them. Sandalwood relies on *Watkins Motor Lines, Inc. v. Crum & Forster Ins. Co.*, No. 3:06–cv–580–J–33MCR, 2006 WL 3328287 (M.D.Fla.2006) to support its position that the requisite contractual relationship to support a bad faith cause of action can be imputed from a subsidiary insurer to its parent company. In *Watkins*, the plaintiff alleged that it had purchased an insurance policy from a subsidiary and its parent company. *Watkins*, 2006 WL 3328287, at *1. Plaintiff brought claims for breach of contract and statutory bad faith based on a denial of claims for damages caused by Hurricane Katrina. *Id.* The defendant parent company moved to dismiss the complaint arguing that it was not a party to the insurance policy. *Id.* at *2–3. The plaintiff argued that the policy was issued by both the subsidiary *and* the parent company. *Id.* at *4. Plaintiff pointed to the fact that the parent company's name appeared on 37 of the 137 pages of the policy and also that the policy provided that the parent company would be available to assist the insured in its risk management plan. *Id.* Construing the facts in the light most favorable to the plaintiff, the court held that it was plausible that the parent company was a party to the contract. *Id.* at *5. The court found that the appearance of the parent company's name on multiple pages throughout the policy and the fact that the policy did not define the insurer showed that it was unclear whether the parent company actually issued the policy. *Id.* at *5–6.

Sandalwood urges this Court to use *Watkins* as a template for allowing an insured to bring a statutory bad faith claim against a parent company based on the insured's contractual relationship with a subsidiary. However, Sandalwood's analogy to *Watkins* is inapposite. Unlike the policy in *Watkins*, the policy here is unambiguous. The policy clearly identifies Empire as the insurer. Zurich's name appears on one page of the policy while the parent company's name in *Watkins* was scattered throughout the policy. Unlike the policy in *Watkins*, Zurich's name does not appear within the terms of the policy so as to create an ambiguity as to which

company is actually providing insurance coverage. On the contrary, Zurich's name appears in the copyright line of one page of the policy. *See* **[DE 11–3]**, at 25. The appearance of Zurich's name on one page of the policy does not create an ambiguity as to which company was Sandalwood's insurer.

Plaintiff also relies on *Derocher v. Zurich Am. Ins. Co.* to support its position that Zurich can be held liable for alleged bad faith actions by its subsidiary Empire. No. 3:08–CV–0797, 2008 WL 4671754 (M.D.Pa. October 16, 2008). In *Derocher,* plaintiff brought a breach of contract action based upon a policy issued by one insurance company, which was subsequently taken over by that company's parent company, Zurich American. *Id.* at *1–2. In that case, Zurich American moved to dismiss, arguing that the plaintiff failed to state a claim because Zurich American was not a party to the contract. *Id.* at *2, *5. The court denied Zurich American's motion to dismiss and found that the allegations created a reasonable expectation that discovery would reveal evidence of an insurance contract between Zurich American and the plaintiff. *Id.* at *4. Pointing to the fact that the subsidiary company had become to be known as Zurich and that Zurich was responsible for adjusting and administering plans for the subsidiary company, the court found that the plaintiff's complaint stated a cause of action for breach of contract against Zurich, the parent company. *Id.* at *4–5.

▬ *Derocher* is distinguishable from this case. While Zurich is the parent company of both of the subsidiary insurance companies, there are no allegations in the instant case that Zurich took over the policy issued by Empire or that Empire had come to be known as Zurich. *Derocher*

does not stand for the principle that a contractual relationship should be automatically imputed upon a parent company when a subsidiary company issues an insurance policy. Rather, the court in *Derocher* found that Zurich's taking over the policy along with other factors was determinative in finding that a contractual relationship could plausibly exist between the parent company and the insured. That is not the case here. The fact that Empire outsources its claims processing to Zurich is not enough to create a contractual relationship. The complaint contains no allegations that Zurich somehow took over the policy from Empire and the policy itself shows that Empire was the insurer.[2] When viewed in light of the policies, the Amended Complaint simply does not contain the allegations necessary to make a contractual relationship between Zurich and Sandalwood plausible. Without that contractual relationship, an action for statutory bad faith cannot lie. *See North American Van Lines, Inc. v. Lexington Ins. Co.,* 678 So.2d 1325, 1330 (Fla.Ct.App. 1996) (stating that statutory bad faith is claim for a breach of a contractual duty); *316, Inc. v. Maryland Cas. Co.,* 625 F.Supp.2d 1187, 1191–92 (N.D.Fla.2008) (stating that the court must evaluate the contractual obligations of the parties in order to determine each parties' obligations and to determine whether the insurer engaged in bad faith conduct in processing the insured's claims).

▬ Not only has Sandalwood failed to allege a contractual relationship between itself and Zurich sufficient to support a claim for statutory bad faith, the Amended Complaint also shows that Sandalwood has failed to perfect its right to sue Zurich for statutory bad faith. Sandalwood has not

---

**2.** Even further and unlike *Derocher,* before the Court in this case are the actual policies upon which the plaintiff's bad faith claim is based. These policies show that the plaintiff's contractual relationship was with Empire and not Zurich.

provided with Zurich with a CRN naming Zurich as the offending party. It is apparent from the CRN filed on the record that this notice was filed against Empire and not Zurich. *See* Plaintiff's Exhibit A (naming Empire Indemnity Insurance Company as the Company to which the notice is directed). While Zurich may have had notice of alleged bad faith actions on the part of Empire, it did not have notice of bad faith actions committed by Zurich. The CRN is "crucial to the procedural integrity" of a statutory bad faith claim. *Allstate Ins. Co.*, 32 F.Supp.2d at 1333. The very purpose of the CRN is to allow the insurer time to cure its bad faith actions. *Talat*, 753 So.2d at 1284. Sandalwood accuses Zurich of putting form over substance. However, these procedural requirements are to be strictly construed. *Id.* at 1284. Strictly construing these requirements, Sandalwood has failed to give Zurich the proper notice required by the statute. Therefore, even if Sandalwood were able to allege the requisite contractual relationship between itself and Zurich, Sandalwood has failed to show that it has given Zurich the proper notice required by statute as evidenced by the CRN attached to the Amended Complaint. *See Heritage Corp.*, 580 F.Supp.2d at 1305 (finding that plaintiff insured's bad faith claim against its insurer's parent company failed because the insured did not file a CRN against the parent company).

Because it clear that Sandalwood has failed to perfect its right to sue Zurich for statutory bad faith by failing to file a CRN against Zurich, the Court need not consider whether the appraisal award obtained by Sandalwood against Empire constitutes a favorable resolution of the underlying dispute.

### IV. Conclusion

In sum, Sandalwood has failed to allege a statutory claim for bad faith because it has not—and based on the policies at is-

sue—cannot allege that a sufficient contractual relationship existed between Sandalwood and Zurich. Sandalwood has also failed to perfect its right to assert a statutory bad faith claim against Zurich by failing to file a CRN asserting violations by Zurich.

The Court has carefully considered the motion, Amended Complaint, exhibits attached thereto, briefs, and relevant portions of the record. Accordingly, it is hereby,

**ORDERED AND ADJUDGED** that defendant Zurich American Insurance Company's Motion to Dismiss the Amended Complaint **[DE 9]** is **GRANTED.** Zurich American Insurance Company is hereby **DISMISSED** from this action.