ANNE C. CONWAY, United States District Judge
This cause comes before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Summary Judgment on Count Two of Plaintiff Juna Mathurin's Complaint for bad faith. (Doc. 7.) Plaintiff responded in *1313 opposition (Doc. 16); State Farm replied. (Doc. 26.) The motion is now ripe for review. For the foregoing reasons, the Court will GRANT State Farm's motion.
I. BACKGROUND[1]
A. FACTUAL BACKGROUND
Plaintiff Juna Mathurin, the personal representative of the estate of Decedent Fluerinat Estephene, brings her two-count complaint for underinsured motorist benefits and statutory bad faith pursuant to Florida Statute § 624.155 arising out of a fatal motor vehicle accident.[2] (Doc. 2.) Although State Farm paid Plaintiff the policy limit of $10,000 under the policy at issue (Kwavnick Aff., Doc. 7-6 ¶ 4), Plaintiff is pursuing an underinsured motorist claim to obtain a determination on the full amount of damages to serve as the recovery amount on the bad faith count. (Doc. 2 at 8.) Plaintiff seeks damages, pre- and post-judgment interest, attorneys' fees, and costs. (Id. at 12.) State Farm seeks summary judgment on Plaintiff's bad faith count. (Doc. 7.)
On June 6, 2011, while working as a taxicab driver, Fleurinat Estephene ("Decedent") was killed when a dump truck owned by an underinsured company struck Decedent's taxi.[3] (Doc. 2 at 2; Doc. 16-1 at 13-14; Mathurin Dep., Doc. 7 at 53, 58.)[4] At the time of Decedent's accident, he resided with the Plaintiff, his girlfriend. (Doc. 7-1 at 62-63.) Decedent owned a 1994 Honda Civic and Plaintiff owned a 2000 Nissan Quest. (Id. at 26-27.) State Farm issued two separate policies for these vehicles. (Owen Affs., Doc. 3-1 & 3-2.) State Farm assigned the policy number 406-8935-C21-59B to the policy on Plaintiff's vehicle ("Nissan Quest Policy"). The policy provided nonstacking underinsured/uninsured motorist ("UM") coverage with policy limits of $50,000 per person and $100,000 per accident. (Doc. 3-2 at 2.)
*1314 For the policy covering Decedent's Honda Civic ("Honda Civic Policy"), State Farm assigned the policy number 698-7601-F19-59. (Doc. 3-1 at 2.) The Honda Civic Policy provided nonstacking UM policy limits of $10,000 per person and $20,000 per accident. (Id. ) On both policies, Plaintiff was the first named insured and Decedent was the second named insured. (Doc. 16-1 at 1, 3.) In a state action, the court determined that Decedent should have been the first named insured on the Honda Civic Policy since he was the owner and principal operator of the Honda Civic. (Doc. 7-8 at 51-52.)[5]
After the June 6, 2011 accident, Plaintiff sought UM benefits as Decedent's personal representative from State Farm. On June 24, 2011, State Farm sent a letter to Plaintiff[6] as a follow up on a telephone call between Plaintiff and State Farm. (Doc. 16-1 at 5.) In the letter, State Farm assigned the claim number "59-A820-386" to Plaintiff's claim and listed the policy number of the Nissan Quest Policy with the higher limits. (Id. ) On June 27, 2011, Plaintiff sent a letter to State Farm, notifying State Farm that Plaintiff would proceed with an uninsured motorist claim and requesting proof of UM coverage that was provided to Plaintiff and the UM rejection sheet if coverage was denied.[7] (Doc. 16-1 at 7.) In response, on July 18, 2011, State Farm sent two letters to Plaintiff, one containing policy information for the Nissan Quest Policy and another for the Honda Civic Policy. (Id. at 8-12.)
On August 18, 2011, Plaintiff sent a demand letter to State Farm offering to settle the claim for the UM policy limits; while Plaintiff included the claim number, she did not specify under which policy she was claiming coverage. (Id. at 13.) On September 9, 2011, State Farm sent a letter to Plaintiff denying coverage for the accident without specifying the policy. (Id. at 15.) State Farm stated that the vehicle Decedent was driving at the time of the accident did not qualify for coverage under the liability portion of the policy and "[Decedent] [did] not meet the definition of an insured under the uninsured motorist coverage." (Id. )
On January 27, 2012, pursuant to Florida Statute § 624.155, Plaintiff filed a civil remedy notice ("CRN") under the Nissan Quest Policy with the Florida Department of Financial Services based on State Farm's alleged failure to settle Plaintiff's claim in good faith (Doc. 2-2), and provided State Farm with a copy of the CRN. (Id. ) In the CRN, Plaintiff listed State Farm's assigned claim number but not the Honda Civic Policy number. (Id. at 16.) It is undisputed that Plaintiff never provided State Farm with a CRN under the Honda Civic Policy for this claim. (Wallace Aff., Doc. 7-7 ¶ 6.) On March 6, 2012, State Farm responded to the CRN by denying the allegations in the CRN and asserting that Decedent was not entitled to UM coverage under the Nissan Quest Policy.
*1315 (Doc. 16-1 at 20-21.) "On April 1, 2013, State Farm (through its counsel) paid Plaintiff the $10,000 each-person policy limit under the Honda [Civic] Policy." (Doc. 7 ¶ 6; Doc. 7-6 ¶ 6.)
B. PROCEDURAL HISTORY
1. 2012 State Case[8]
Plaintiff has brought multiple lawsuits against State Farm stemming from the accident and State Farm's denial of coverage. On November 15, 2012, Plaintiff filed suit against State Farm in the Palm Beach County Circuit Court, seeking a declaratory judgment that the Honda Civic Policy provided UM coverage for the accident. (Doc. 7-8 at 2-5.) On December 14, 2012, Plaintiff amended her complaint and sought a declaratory judgment for coverage under both the Honda Civic Policy and Nissan Quest Policy. (Id. at 17.) On January 30, 2013, in State Farm's Answer and Affirmative Defenses, it agreed that the Honda Civic Policy provided UM coverage for the accident, but it denied that the Nissan Quest Policy provided coverage. (Id. at 25-29.) On April 30, 2013, pursuant to an agreed order by the parties, the case was transferred to the Orange County Circuit Court. (Id. at 30-31.) Nearly three years later, on January 1, 2016, Plaintiff amended her complaint and sought a declaratory judgment for UM coverage only under the Honda Civic Policy. (Id. at 32-36.) On April 11, 2017, the state court issued a Final Declaratory Judgment, declaring that the Estate of Estephene was deemed an insured under the Honda Civic Policy's UM coverage because Decedent should have been listed as the first named insured on the policy since he was the owner and principal operator of the Honda Civic (Id. at 51-52.)
2. 2013 Federal Case
On July 16, 2013, Plaintiff filed a separate action seeking UM coverage benefits and bad faith under the Nissan Quest Policy in state court. See Mathurin v. State Farm Mut. Auto. Ins. Co. , Case No. 6:13-cv-01263-CEH-GJK (M.D. Fla. July 16, 2013) (M.D. Fla. July 16, 2013) (Doc. 3). On August 19, 2013, State Farm removed Plaintiff's case to this Court. (See id. at Doc. 1.) On September 25, 2013, the Court granted the parties' Joint Motion for Dismissal of Action and dismissed the case without prejudice. (Id. at Doc. 20.)
3. The Present Case
Four years later, on September 6, 2017, Plaintiff filed her second action in state court seeking UM coverage benefits and bad faith but this time under the Honda Civic Policy . (Doc. 2.) For the UM benefits claim, Plaintiff alleges that "[State Farm] has unjustifiably refused to honor its contractual obligations by denying coverage under the Policy and failing to pay the uninsured motorist benefits owed to [Plaintiff]." (Id. ¶ 19.) However, it is undisputed that on April 1, 2013, State Farm paid Plaintiff the $10,000 UM policy limit under the Honda Civic Policy. (Doc. 7-6 at 4; Doc. 7 ¶ 6; Doc. 16 ¶ 6.) Plaintiff alleges statutory bad faith under Florida Statutes § 624.55 for State Farm's alleged acts during the handling of Plaintiff's claim, such as State Farm failing to attempt in good faith to settle Plaintiff's claim and placing its own financial interests before Plaintiff's. (Doc. 2 at 9.) In support of her *1316 Complaint, Plaintiff attached her previously filed CRN under the Nissan Quest Policy. (Doc. 2-2 at 15-17.) On October 12, 2017, State Farm removed the present case to this Court based on diversity jurisdiction. (Doc. 1.) On October 20, 2017, State Farm moved for summary judgment on Plaintiff's bad faith count. (Doc. 7.) On November 17, 2017, Plaintiff responded to State Farm's Motion for Summary Judgment. (Doc. 16.) On December 5, 2017, State Farm replied to Plaintiff's Response. (Doc. 26.)
II. LEGAL STANDARD
A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the movant who bears the initial burden of "identifying for the district court those portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.' " Cohen v. United Am. Bank of Cent. Fla. , 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting Cox v. Adm'r U.S. Steel & Carnegie , 17 F.3d 1386, 1396, modified on other grounds , 30 F.3d 1347 (11th Cir. 1994) ). In a case in which the non-movant bears the burden of proof at trial, the movant may carry its initial burden by either negating an essential element of the non-movant's case or by demonstrating the absence of evidence to prove a fact necessary to the non-movant's case. Fitzpatrick v. City of Atlanta , 2 F.3d 1112, 1115-16 (11th Cir. 1993) (citation omitted). Once the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating an issue of material fact. Id. at 1116. If the movant demonstrates the absence of evidence on a material fact for which the non-movant bears the burden of proof, then the non-movant must either show that the record contains evidence that the movant "overlooked or ignored" or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (citation omitted). The non-movant must provide more than a "mere scintilla of evidence" supporting its position, and "there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby , 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).
Federal courts cannot weigh credibility at the summary judgment stage. See Feliciano v. City of Miami Beach , 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." (citation omitted). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead [will] accept [the non-moving party's] version of the facts drawing all justifiable inferences in [the non-movant's] favor." Burnette v. Taylor , 533 F.3d 1325, 1330 (11th Cir. 2008). Notwithstanding this inference, "[t]here is [still] no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." Cohen , 83 F.3d at 1349.
III. ANALYSIS
Florida Statute § 624.155 allows any person to bring a cause of action against an insurer who among other things, "do[es] [n]ot attempt[ ] in good faith to settle claims when, under all the circumstances, it could and should have done so." Fla. Stat. § 624.155(1)(a)(1).
*1317 However, "[a]s a condition precedent to bringing an action under this section, the [Department of Financial Services] and the authorized insurer must have been given 60 days' written notice of the violation." Fla. Stat. § 624.155(3)(a) (emphasis added); Erskin Bell v. GEICO Gen. Ins. Co. , No. 6:09-CV-876-ORL-35KRS, 2011 WL 13174849, at *2-3 (M.D. Fla. Dec. 14, 2011), aff'd , 489 Fed.Appx. 428 (11th Cir. 2012). This notice is commonly referred to as a "CRN," civil remedy notice. See, e.g. , Lopez v. Geico Cas. Co. , 968 F.Supp.2d 1202, 1204 (S.D. Fla. 2013) ; Heritage Corp. of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA , 580 F.Supp.2d 1294, 1300 (S.D. Fla. 2008), aff'd , 361 Fed.Appx. 986 (11th Cir. 2010). "The CRN is crucial to the procedural integrity of a statutory bad faith claim" because it starts the sixty day window for insurers to preclude a statutory bad faith claim by paying the amount due under the insurance policy to the insured. Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co. , 665 F.Supp.2d 1355, 1358 (S.D. Fla. 2009) (citation and internal quotation marks omitted); Talat Enterprises, Inc. v. Aetna Cas. and Sur. Co. , 753 So.2d at 1283. (" Section 624.155(3)(d) provides the insurer an opportunity to cure any alleged violation of its duty of good faith through the payment of the contractual amount due the insured."). Under § 624.155(3)(d), "[n]o action shall lie if, within 60 days after filing [the CRN], the damages are paid or the circumstances giving rise to the violation are corrected."
Florida Statute § 624.155(3)(b) lists the requirements for an acceptable CRN as follows
(b) The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:
1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.
2. The facts and circumstances giving rise to the violation.
3. The name of any individual involved in the violation.
4. Reference to specific policy language that is relevant to the violation, if any....
5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.
Fla. Stat. § 624.155(3)(b).
Plaintiff's chief contention is that her CRN which listed the Nissan Quest Policy can perfect a statutory bad faith claim under the Honda Civic Policy, which is a separate policy with different UM limits and covers a vehicle that was owned by the Decedent but not by Plaintiff. The Court finds that the CRN citing the Nissan Quest Policy does not support a bad faith claim on the Honda Civic Policy, and State Farm is entitled to summary judgment as a matter of law on Plaintiff's bad faith count.
State Farm argues that Plaintiff cannot pursue a bad faith claim under the Honda Civic Policy because she never filed a CRN under the Honda Civic Policy. (Doc. 7 at 7.) State Farm relies on Nowak v. Lexington Insurance Co. , 464 F.Supp.2d 1248 (S.D. Fla. 2006), for the proposition that there is no "close enough" under § 624.155 (Doc. 7 at 8.) State Farm highlights the disparity in the policy limits-the Nissan Quest Policy's limit was $50,000 and the Honda Civic Policy's limit was $10,000. (Id. at 9.) State Farm emphasizes that it would have cost State Farm $50,000 to cure Plaintiff's CRN under the Nissan Quest Policy to avoid Plaintiff's bad faith claim *1318 under the Honda Civic Policy with a limit of $10,000. (Id. ) State Farm argues that it was not afforded the opportunity to cure a CRN by paying only the Honda Civic Policy's $10,000 limit, which is now the basis of the Plaintiff's lawsuit. (Id. ) State Farm argues that Plaintiff cannot cure the defects of its bad faith count because State Farm has already paid Plaintiff $10,000 under the Honda Civic Policy's UM limits and the matter is resolved. (Doc. 7 at 10.) State Farm, relying on Talat , asserts that if Plaintiff were to now file a CRN under the Honda Civic Policy, the CRN could not perfect her current bad faith claim because it would automatically be cured by State Farm's previous payment of UM benefits under the Honda Civic Policy on April 1, 2013. (Id. )
In response, Plaintiff asserts that Florida Statute § 624.155 does not require the policy number be on the CRN and that its CRN complied with the notice requirements. (Doc. 16 at 8-9.) Plaintiff further contends that her identification of the incorrect policy number is immaterial and points to communication between State Farm and Plaintiff in which the Nissan Quest and Honda Civic Policy were associated with the same claim number. (Id. at 11-12.) Plaintiff argues that State Farm cannot now argue that State Farm was unaware of the claim under the Honda Civic Policy. (Id. at 12.) Plaintiff further argues that State Farm waived the issue of what she characterizes as the "incorrect" policy number on the CRN by failing to raise it in State Farm's response to Plaintiff's CRN. (Id. at 13.)
In reply, State Farm argues that § 624.155 requires an insured's representative to state a policy number on the CRN. (Doc. 26 at 2.) Alternatively, State Farm argues that even if the policy number were optional, Plaintiff's CRN under the Nissan Quest Policy would satisfy the condition precedent for bringing a bad faith claim under the Nissan Quest Policy; however, it would not satisfy the condition precedent for a bad faith claim "under a different policy insuring a different vehicle belonging to a different person." (Id. at 3.) State Farm emphasizes that the CRN's purpose is to put the insurer on notice that it potentially improperly denied a claim and to give the insurer sixty days to preclude a bad faith action by paying the policy limits. (Id. ) State Farm contends that, when an insurer receives a CRN with a specific policy number on it, the insurer is expected to examine its coverage decision on the policy specifically identified in the CRN. (Id. at 4.)
Plaintiff argues that the plain language of § 624.155(3)(b) does not state that a policy number is required and Defendant has provided no evidence to show what information the Department requires. (Doc. 16 at 11.) Plaintiff is correct that the plain language of the statute does not state that a policy number is required. However, the Court finds that a policy number is required for an acceptable CRN under § 624.155(3)(b). State Farm points to the language of § 624.155(3)(b), which states: "The notice shall be on a form provided by the [Department of Financial Services] and shall state with specificity the following information, and such other information as the department may require: " (Doc. 26 at 2) (emphasis in original). In this case, Plaintiff's CRN, submitted on the form created by the Department of Financial Services, contains a field that asks for the "Policy # " and provides a blank space for claimants to enter a policy number (Doc. 2-2 at 16.) As State Farm correctly highlights, the statute contains a provision that allows the Department of Financial Services to create the CRN form and require additional information. Plaintiff's CRN clearly shows *1319 a place for claimants to enter a policy number. (Id. ) In this case, Plaintiff's CRN is sufficient for State Farm to meet its burden on summary judgment because Plaintiff's CRN shows the information that the Department of Financial Services requires from claimants. See O'Leary v. First Liberty Ins. Corp. , No. 8:10-CV-1625-T-23TBM, 2010 WL 3610446, at *3 (M.D. Fla. Sept. 14, 2010) (finding that the insureds' CRN satisfied the statute and provided sufficient notice because it included the policy number along with other information).
State Farm also argues that even if a policy number is optional, a CRN under one policy cannot perfect a statutory bad faith claim under another policy. (Doc. 26 at 3.) The Court agrees. While Plaintiff filed a CRN under the Nissan Quest Policy, it now brings a bad faith claim premised on the Honda Civic Policy. Neither the parties nor the Court found a case involving this particular issue. However, under Florida law, since § 624.155 is in derogation of the common law, courts have strictly construed the statute and required strict compliance with the statute's notice requirements.[9] See, e.g. , Estate of Jorge Luis Arroyo, Jr. v. Infinity Indem. Ins. Co. , No. 15-20548-CIV, 2016 WL 4401051, at *3 (S.D. Fla. Aug. 18, 2016) (citation omitted); Nowak v. Lexington Ins. Co. , 464 F.Supp.2d 1248, 1252 (S.D. Fla. 2006) (citations omitted); Talat , 753 So.2d at 1284.
State Farm relies on Nowak v. Lexington Insurance Co. , 464 F.Supp.2d 1248 (S.D. Fla. 2006), to support its argument that "close enough" is not sufficient under § 624.155. (Doc. 7 at 8.) In Nowak , the plaintiff filed a CRN against his insurer, alleging that the insurer had violated Florida Statute § 624.155(1)(b). Nowak , 464 F.Supp.2d at 1250. However, in his complaint, the plaintiff alleged that the insurer also violated Florida Statute § 624.9451(1)(i). Id. The insurer moved for partial summary judgment on the § 624.9451(1)(i) claim because plaintiff had failed to give proper notice under § 624.155(3) by only alleging violations of § 624.155(1)(b) in the CRN. Id. at 1251. Relying on the principle that § 624.155 must be strictly construed, the court agreed and granted the insurer's partial summary judgment on the claim for violation of the uncited statute. Id. at 1252-53. The court noted that the plain language of § 624.155 required the insured to specify in the CRN the statutory provision that the insurer allegedly violated. Id. at 1251.
Plaintiff attempts to distinguish her case from Nowak arguing that she listed the statute that State Farm violated and § 624.155 expressly requires the insured to specify the statutory provisions that the insured allegedly violated.[10] (Doc.
*1320 16 at 10.) Therefore, Plaintiff argues, Nowak is irrelevant and moot. (Id. ) However, as discussed supra , a policy number is required in a CRN on the Department-approved form, even though it is not explicitly required by the statute. It is well-settled that § 624.155 must be strictly construed and Nowak is merely an illustration of this principle. Thus, although Nowak is somewhat different from the present case, its holding is instructive.
Moreover, the Court found similar cases of courts strictly construing the notice requirements under § 624.155 to preclude bad faith claims. For example in Ardrey v. USAA Casualty Insurance Co. , No. 8:12-CV-08-T-24MAP, 2012 WL 831620 (M.D. Fla. Mar. 12, 2012), the plaintiff filed three deficient CRNs. Id. at *2-*4. In the first two, the plaintiff alleged that the insurer had violated Florida Statute § 626.9541(1)(i) by engaging in unfair settlement practices, but the plaintiff failed to specifically provide the subsections of § 626.9541(1)(i) the insurer allegedly violated or provide facts to indicate which subsections were violated, even though the plaintiff stated the specific subsections that the insured allegedly violated in the amended complaint. Id. at *2-*3. The court held that these deficient CRNs did not meet the notice requirements under § 624.155(3)(b) because the CRNs did not provide the specific subsections or facts describing the violation at issue. Id. at *3. The court also found Plaintiff's third CRN to be defective because it did not state that § 626.9541 had been violated. Id. at *4. Thus, the court dismissed the plaintiff's bad faith claim for unfair settlement practices. Id. See, e.g. , Borrego v. State Farm Mut. Auto. Ins. Co. , No. 14-20365-CIV, 2014 WL 2615192, at *4 (S.D. Fla. Apr. 30, 2014) (dismissing a bad faith claim for loss of consortium brought by spouse who was not referenced in CRN); Heritage Corp. of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA , 580 F.Supp.2d 1294, 1299 (S.D. Fla. 2008) (granting summary judgment in insurer's favor on the plaintiff's bad faith claim because plaintiff's CRN was insufficient for numerous reasons, such as not specifying which of the two defendants the CRN's information applied to and what sort of action it wanted one of the defendants to take in response), aff'd , 361 Fed.Appx. 986 (11th Cir. 2010) ; Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co. , 665 F.Supp.2d 1355, 1360-61(S.D. Fla. 2009) (dismissing plaintiff's statutory bad faith claim against insurer's parent company because the plaintiff only named the insurer as an offending party and not the parent company in the CRN); Lopez v. Geico Cas. Co. , 968 F.Supp.2d 1202, 1208-09 (S.D. Fla. 2013) ("Courts have interpreted the civil remedy notice requirement so strictly that they have dismissed bad faith actions against insurers where no CRN has been filed against them even though a CRN has been filed against a related entity.")
Courts have strictly interpreted the notice requirements because "the CRN is designed to prevent insurers from playing a guessing game as to what, and how, to cure within the sixty-day window." King v. Gov't Employees Ins. Co. , No. 8:10-CV-977-T-30AEP, 2012 WL 4052271, at *7 (M.D. Fla. Sept. 13, 2012) (citation and internal quotation marks omitted). As in the present case, it is not uncommon for members of a household to have their own individual vehicles with separate insurance policies. If an insured places a particular policy number on a CRN, then it is reasonable for an insurer to expect a potential bad faith action based on that particular policy. However, if an insured were allowed *1321 to bring a bad faith claim based on a different policy number from the one stated in the CRN simply because policyholders share the same address, then insurers would have to play the guessing game as to what policy to cure within the sixty day window to avoid a bad faith claim.
This problem is heightened in the situation present here-with two vastly disparate policy limits. The Nissan Quest Policy covers Plaintiff's vehicle and provides UM coverage with policy limits of $50,000 per person and $100,000 per accident. (Doc. 3-2 at 2.) The Honda Civic Policy covered Decedent's vehicle and provided UM policy limits of $10,000 per person and $20,000 per accident. (Doc. 3-1 at 2.) The policies at issue offered nonstacking UM benefits. (Docs. 3-1 at 2; 3-2 at 2.) As State Farm points out, since the policies are nonstacking only one of the policies could cover the accident. (Doc. 16-1 at 12.) Plaintiff filed a CRN only under the Nissan Quest Policy, essentially asserting that the Nissan Quest Policy covered the accident and not the Honda Civic Policy. However, Plaintiff now belatedly seeks to use that CRN for the Nissan Quest Policy to support a bad faith action under the theory that the Honda Civic Policy covers the accident.[11] Plaintiff could have filed a CRN under the Honda Civic Policy at any time because neither the plain language of § 624.155[12] nor the case law limit plaintiffs to only filing one CRN per incident. See e.g. , Estate of Jorge Luis Arroyo, Jr. , 2016 WL 4401051, at *2 (the plaintiff filed two CRNs) ; Ardrey, 2012 WL 831620, at *3 (the plaintiff filed three CRNs). For example, Plaintiff could have filed a CRN under the Honda Civic Policy when she first sued State Farm under the Honda Civic Policy on November 15, 2012. However, from Plaintiff's initial action against State Farm on November 15, 2012 to the present-an over five year period-Plaintiff has failed to file a CRN under the Honda Civic Policy and now relies on her CRN under the Nissan Quest Policy to perfect a bad faith claim based on the Honda Civic Policy.[13] Given how strictly courts have interpreted the notice requirements, Plaintiff's CRN under the Nissan Quest Policy cannot perfect its bad faith claim under the Honda Civic Policy. Moreover, for this reason the Court also rejects Plaintiff's argument that its CRN complies with the notice requirements. (Doc. 16 at 8-9.)
Notably, Plaintiff previously pursued a bad faith claim in August 2013 under the Nissan Quest Policy based on her CRN for the Nissan Quest Policy, but agreed to dismiss the case about a month later. Mathurin v. State Farm Mut. Auto. Ins. Co. , Case No. 6:13-cv-01263-CEH-GJK (M.D. Fla. Sept. 24, 2013) (Docs. 19, 20).
State Farm cites to *1322 Erhard v. Hartford Accident and Indemnity Co. , No. 07-60532-CIV, 2008 WL 203583, at *4 (S.D. Fla. Jan. 23, 2008), which further supports the Court's decision. (Doc. 26 at 4-5.) In Erhard , the plaintiff listed himself as an assignee in his CRN against his insurance company but brought his bad faith claim in his individual capacity. Erhard , 2008 WL 203583, at *5. The insurer moved to dismiss the plaintiff's bad faith claim based on this discrepancy. Id. The plaintiff opposed the motion and argued that neither the statute nor case law require that the plaintiff indicate on the CRN whether he was suing as both an assignee and as an individual. Id. (citations omitted.) While the court noted that there was no Florida case law on point, it held that previous cases had established that strict compliance with the statute is required and refused "to expand the ability of a plaintiff to sue for claims not specifically noticed in the statutory [n]otice required as a precondition to suit." Id. As a result, the plaintiff's bad faith claim was dismissed. Id. Similarly, there is not a case directly on point here, and the statute does not specifically require a policy number. However, State Farm has a stronger case than the insurer in Erhard because as discussed supra , the Department of Financial Services specifically requires a policy number on an acceptable CRN.
State Farm argues that it was never given the opportunity to cure a CRN by paying the $10,000 limit under the Honda Civic Policy on which Plaintiff now bases its bad faith claim. (Doc. 7 at 9.) State Farm argues that, since the Nissan Quest Policy's limit was $50,000-as opposed to the $10,000 Honda Civic Policy-State Farm would have had to pay $50,000 to cure Plaintiff's CRN "to avoid a claim under a policy whose limit was only $10,000." (Doc. 7 at 9.) In response, relying on Hunt v. State Farm Florida Insurance Company , 112 So.3d 547 (Fla. 2d DCA 2013), Plaintiff argues that the court should reject State Farm's "cure amount" argument because a CRN is not required to state a specific cure amount. (Doc. 16 at 13.) While Plaintiff relies on Hunt for the proposition that an acceptable CRN does not have to state a specific cure amount, State Farm does not argue that Plaintiff was required to state a specific cure amount in her CRN. Instead, State Farm argues that it was denied the opportunity to cure a CRN for the Honda Civic Policy and thus, avoid this bad faith action by paying the Honda Civic Policy's $10,000 UM limit within the sixty day window from the time the CRN was filed. This clearly contradicts the intent of the statute and illustrates why Plaintiff should not be allowed to use its CRN under the Nissan Quest Policy to perfect a bad faith claim under the Honda Civic Policy. It is irrational that State Farm could have precluded this bad faith claim based on the Honda Civic Policy with a $10,000 UM policy limit by paying $50,000 to cure the CRN under the Nissan Quest Policy. Plaintiff had years to file a CRN under the Honda Civic Policy but chose to only file a CRN for the Nissan Quest Policy with the considerably higher UM policy limits. Additionally, State Farm argues, Hunt is distinguishable from the present case. In Hunt , the same insurance policy was the basis of the plaintiff's CRN and complaint. (Doc. 26 at 9.) However, here, Plaintiff's Complaint and CRN "list two insurance policies on two different vehicles with two different policy limits." (Doc. 26 at 10.)
Moreover, as State Farm emphasizes, the policies provide non-stacking UM benefits, which means only one could cover the accident. Because Plaintiff, through her former counsel, chose to list the Nissan Quest Policy in her CRN, with its higher limits, Plaintiff is bound by that decision. (Doc. 26 at 10.) State Farm argues that the difference between UM policy limits under *1323 the Nissan Quest Policy, which has a limit of $50,000, and the Honda Civic Policy, which has a limit of $10,000, shows the flaw in allowing a plaintiff to file a CRN based on one policy and then subsequently file a bad faith claim under a different policy. (Doc. 26 at 11-12.)
One of State Farm's well-reasoned arguments provides a possible answer as to why Plaintiff never filed a CRN for the Honda Civic Policy. State Farm, relying on Talat Enterprises, Inc. v. Aetna Casualty & Surety Co. , 753 So.2d 1278 (Fla. 2000), argues that "when an insurer pays the policy limit before a CRN is filed, the CRN is deemed automatically cured upon filing, and the cause of action never comes into existence." (Doc. 7 at 10.) Therefore, State Farm argues if Plaintiff were to file a CRN under the Honda Civic Policy now, Plaintiff would still not be able to pursue a bad faith action under the Honda Civic Policy and her subsequent pleading would not cure the defects in Plaintiff's bad faith count because State Farm's previous payment of $10,000 on April 1, 2013 under the Honda Civic Policy's UM limit would retroactively cure the CRN. (Doc. 7 at 10.) The Court agrees. Logically, if an insurer pays the policy limits before the CRN is filed then its payment is clearly before the expiration of the sixty day period, thus precluding a bad faith action.
Plaintiff next argues that the claim number in the CRN put State Farm on notice that she was making a claim under the correct policy number for the Honda Civic Policy and its $10,000 UM limit. (Doc. 16 at 12-13.) Plaintiff emphasizes letters from State Farm to Plaintiff on July 18, 2011, which show the two different policies for the Honda Civic and Nissan Quest were associated with the same claim number. (Doc. 16 at 12.) In reply, State Farm argues that the Plaintiff's CRN only stated one policy (for the Nissan Quest) and not the policy for the Honda Civic; because the policies offer nonstacking UM coverage, they are mutually exclusive. (Doc. 26 at 6.) The Court agrees. Although these policies may have been associated with the same claim number, Plaintiff only filed a CRN under the Nissan Quest Policy . Since these policies offer nonstacking UM coverage, Plaintiff implicitly stated that the Honda Civic Policy did not cover the accident by filing its CRN under the Nissan Quest Policy. Moreover, while Plaintiff points to letters as proof that State Farm was on notice of the "correct" policy number, neither the statute nor case law support the argument that outside communication can provide "notice." The statute focuses on the filing of the CRN and the requirements for an acceptable CRN, not the contents of other communication between parties. Further, in Nowak discussed supra , based on the principle of strict construction of the statute, the court rejected the plaintiff's argument that the insurer had actual notice based on correspondence between the parties that plaintiff planned to allege violations not mentioned in plaintiff's CRN. Nowak , 464 F.Supp.2d 1248. The Nowak court focused on the violations the plaintiff alleged in the CRN. Id. at 1251-53. Here, in looking to Plaintiff's CRN, Plaintiff chose to include the Nissan Quest Policy's number, not the Honda Civic Policy's number. Also, similar to the plaintiff in Nowak , Plaintiff fails to cite to any legal authority to support its position. Additionally, correspondence between Plaintiff and State Farm undercuts Plaintiff's argument. In response to Plaintiff's demand for policy information, State Farm sent Plaintiff information on both policies. (Doc. 16-1 at 8-13.) Plaintiff then chose to file a CRN only on the Nissan Quest Policy with the higher policy limit. (Doc. 2-2 at 16-17.)
In the alternative, Plaintiff argues that State Farm's Motion for Summary Judgment *1324 is premature and should be denied because no discovery has yet been conducted in this case. (Doc. 16 at 6.) Plaintiff emphasizes that State Farm moved for summary judgment only eight days after this case had been removed from state court to this Court, the parties had not submitted a case management report at the time of the motion, and Plaintiff had no opportunity to conduct discovery. (Doc. 16 at 6.) In reply, State Farm counters that there is no second CRN at issue. (Doc. 26 at 8.) State Farm asserts that all the Court needs to decide this case is the Complaint, policies, and the CRN. (Doc. 26 at 8.) State Farm also argues that Plaintiff failed to comply with Federal Rule of Civil Procedure 56(d) by failing to file an affidavit or declaration specifying any particular fact that could not be presented to the Court in opposition to State Farm's Motion for Summary Judgment. (Doc. 26 at 8-9.) State Farm further argues that the only evidence that could change the Court's analysis is a second CRN under the Honda Civic Policy and Plaintiff does not need to conduct discovery to determine whether Plaintiff filed a second CRN because Plaintiff knows that one does not exist. (Doc. 26 at 9.)
Plaintiff cites a number of cases finding a summary judgment motion is premature when made before discovery and should be denied. (Doc. 16 at 6.) "Although courts generally refrain from granting summary judgment 'until the party opposing the motion has had an adequate opportunity to conduct discovery,' the Eleventh Circuit Court of Appeals has rejected adopting a 'blanket prohibition on the granting of summary judgment motions before discovery' has occurred or concluded." Rinderknecht v. Quicken Loans, Inc. , No. 2:15-CV-19-FTM-29MRM, 2016 WL 1271474, at *2 (M.D. Fla. Apr. 1, 2016), appeal dismissed (Sept. 26, 2016) (citing Reflectone, Inc. v. Farrand Optical Co. , 862 F.2d 841, 843 (11th Cir. 1989) ) (analyzing Rule 56(d)'s predecessor, Rule 56(f) ). Moreover, "no federal rule requires that a party wait until discovery has taken place before moving for summary judgment." Rinderknecht , 2016 WL 1271474 at *2 (citation and internal quotation marks omitted.) "Additionally, summary judgment may be appropriate when no discovery has been held." Smedley v. Deutsche Bank Tr. Co. Americas , 676 Fed.Appx. 860, 862 (11th Cir. 2017) (citing Reflectone, Inc., 862 F.2d at 843 ).[14] "[R]ule 56[ (d) ] shows that a court may grant summary judgment without the parties having conducted discovery if the opponent has not sought discovery by making a motion under rule 56 [ (d) ]...." Reflectone, Inc., 862 F.2d at 844.
Rule 56(d) allows nonmovants an avenue to combat allegedly premature motions for summary judgment. See Celotex Corp. v. Catrett , 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (discussing Rule 56(d)'s predecessor, Rule 56(f) ). "Under Rule 56(d), where the non-moving party to a motion for summary judgment shows 'by affidavit or declaration' that, for specified reasons, it 'cannot present facts essential to justify its opposition,' the district court may delay consideration of the motion, deny the motion, allow additional time for discovery, or issue another appropriate order." Smedley, 676 Fed.Appx. at 861 (quoting Fed. R. Civ. Pro. 56(d) ). Plaintiff's failure to file an affidavit or declaration giving the specific reasons she cannot present facts essential to her opposition to State *1325 Farm's Motion for Summary Judgment-other than her mere assertion that summary judgment is premature because discovery has not been conducted-fails to meet the requirements of Rule 56(d). "Courts cannot read minds, so the nonmoving party must give more than vague assertions that additional discovery will produce needed, but unspecified, facts." Urquilla-Diaz v. Kaplan Univ. , 780 F.3d 1039, 1063 (11th Cir. 2015) (citation and internal quotation marks omitted.) Moreover, Plaintiff failed to make a Rule 56(d) motion. See id. at 1063-64 (rejecting appellant's argument that district court prematurely granted summary judgment because appellant failed to provide the district court with " Rule 56(d) notice, affidavit, or anything of the kind"); Reflectone, Inc , 862 F.2d at 843 (affirming district court's grant of summary judgment against appellant before discovery had been conducted when appellant failed to make a motion under Rule 56(d)'s predecessor, Rule 56(f) ).
It is a bit misleading for Plaintiff to argue that she has had no opportunity to conduct discovery in this case. While this present case is only a few months old, the parties have been litigating the underlying facts since November 15, 2012 (Doc. 7-8 at 2-5) in various proceedings in state and federal court, and they have conducted discovery, such as State Farm's deposition of Plaintiff on January 18, 2017. (Doc. 7-1.)
Most importantly, at this point, there are no genuine issues of material fact to preclude summary judgment. It is undisputed that Plaintiff only provided State Farm with a CRN under the Nissan Quest Policy, which is attached to the Complaint. (Doc. 7-7 ¶ 6; Doc. 7 ¶ 5; Doc. 16 ¶ 5). Plaintiff is now solely relying on this CRN to perfect its bad faith claim under the Honda Civic Policy. As State Farm correctly argues, all the Court needs to rule on State Farm's Motion for Summary Judgment is the Complaint, Plaintiff's CRN, and the policies. Allowing time for further discovery would be futile and incur unnecessary expense. Desimoni v. TBC Corp. , No. 2:15-CV-366-FTM-99CM, 2016 WL 1572391, at *1 (M.D. Fla. Apr. 19, 2016) ("While the Court need not wait until the end of discovery, summary judgment is appropriate only when an adequate factual record exists and when further discovery would be pointless.") (citations and internal quotation marks omitted.) Therefore, the Court will not delay granting State Farm's Motion for Summary Judgment based on the lack of any reasoned argument from Plaintiff to do so.
Plaintiff argues that in State Farm's response to Plaintiff's CRN, State Farm failed to object to the identification of what she characterizes as the "incorrect" policy number, although State Farm had notice that the Honda Civic Policy was associated with the same claim number. (Doc. 16 at 13.) Plaintiff asserts that State Farm waived the issue of Plaintiff's filing the CRN under the Nissan Quest Policy by failing to raise it in its response and by paying the $10,000 policy limit on April 1, 2013 after Plaintiff filed a declaratory judgment action on November 15, 2012 . (Doc. 16 at 13) (citing State Farm Ins. Co. v. Ulrich , 120 So.3d 217 (Fla. 4th DCA 2013) ). In reply, State Farm argues that it did not waive the CRN requirement and the policy number on Plaintiff's CRN did not become "incorrect" until more than five years later when Plaintiff filed this bad faith action under a different policy. (Doc. 26 at 7.) State Farm also argues that the holding in State Farm Insurance Co. v. Ulrich , 120 So.3d 217 (Fla. 4th DCA 2013) does not support Plaintiff's waiver argument because the court dismissed the insurer's petition without addressing the merits and that case involved the distinguishable issue of a CRN not being specific *1326 enough. (Doc. 26 at 7-8.) As State Farm emphasizes, in this case, the CRN under the Nissan Quest Policy cannot be used to perfect a bad faith action "under a different policy covering a different vehicle belonging to a different person." (Doc. 26 at 8.) The Court agrees with State Farm's arguments against waiver.
State Farm did not waive its objection to Plaintiff filing a CRN under the Nissan Quest Policy and bringing this bad faith action under the Honda Civic Policy. An insurer can detect a "lack of specificity" from the face of the CRN when an insurer receives the CRN. However, as in this case, an insurer cannot detect an incorrect policy number from the face of the CRN when the plaintiff provides a valid insurance policy number on the CRN, but the plaintiff subsequently decides to file a bad faith action under a totally different policy. It would be inequitable to find an insurer's objection against a plaintiff's policy switching is waived when a plaintiff made the conscious choice to switch the policy under which the plaintiff alleges bad faith.
The Court also need not address the parties' arguments that the Court abate the bad faith count until the resolution of Count I on UM coverage, because the Court is granting State Farm's Motion for Summary Judgment. (Doc. 7 at 11; Doc. 16 at 13-14.) Since the Court is granting State Farm's Motion for Summary Judgment, the parties' other arguments are moot.[15]
IV. CONCLUSION
Based on the foregoing, it is ordered as follows:
1. Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment on Count Two (Doc. 7) filed October 20, 2017, is GRANTED.
2. Plaintiff Juna Mathurin's Count Two of her Complaint (Doc. 2) filed on September 6, 2017, is DISMISSED .
3. Defendant State Farm Mutual Automobile Insurance Company's Motion to Dismiss Count Two (Doc. 3), filed October 19, 2017, is DENIED as moot .
DONE and ORDERED in Chambers, in Orlando, Florida on January 4, 2018.

At the summary judgment stage, facts are read in the light most favorable to the non-moving party; here the non-moving party is Plaintiff. White v. Beltram Edge Tool Supply, Inc. , 789 F.3d 1188 (11th Cir. 2015) (citation omitted).

The Court recognizes that generally these two claims cannot be pursued together because "[u]nder Florida law, a final determination as to coverage and damages for the underlying insurance claim must be made before a statutory bad faith claim can proceed." Gianassi v. State Farm Mut. Auto. Ins. Co. , 60 F.Supp.3d 1267, 1269 (M.D. Fla. 2014). However, this requirement can be satisfied by an insurer's payment of the full policy limit. Indian Harbor Ins. Co. v. Int'l Studio Apartments, Inc. , No. 09-60671-CIV, 2009 WL 10668603, at *4 (S.D. Fla. Sept. 22, 2009) ("Florida courts have recognized multiple methods for determining the insurer's liability and the insured's damages for purposes of a bad faith claim, including litigation, arbitration, and payment by an insurer of the full policy limit .") (emphasis added) (citations omitted). As will be discussed infra , State Farm paid the policy limit of $10,000 to Plaintiff under the Honda Civic Policy on April 1, 2013. (Kwavnick Aff., Doc. 7-6 ¶ 4.) Therefore, the Court is allowing Plaintiff to proceed with both of its counts.

Plaintiff settled with the dump truck company for $500,000. (Doc. 16-1 at 13; Mathurin's Dep., Doc. 7-1 at 84-86.)

Although this deposition was taken in the parties' previous state court coverage case, it may be considered at the summary judgment stage in the current case because the deposition testimony is being used against Plaintiff and she was present and represented at the deposition. Nippon Credit Bank, Ltd. v. Matthews , 291 F.3d 738, 750-51 (11th Cir. 2002), abrogated on other grounds by Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc. , 593 F.3d 1249 (11th Cir. 2010). See Hooks v. GEICO Gen. Ins. Co. , No. 3:13-CV-891-J-34JBT, 2015 WL 134144, at *2 (M.D. Fla. Jan. 9, 2015) (relying on Nippon Credit Bank to allow deposition testimony taken in a previous case to be considered at the summary judgment of another case).

State Farm had argued in the state court litigation that Plaintiff and Decedent "represented that they were married when applying for the Policy," which Plaintiff denied; however, the judge found "[t]he issue concerning the parties' marital status [was] not a legally sufficient basis to deny uninsured motorist coverage." Doc. 7-8 at 51-52.

State Farm sent the letter to Plaintiff's then-attorney and he handled the subsequent communications between State Farm and Plaintiff mentioned in this paragraph and the subsequent paragraph.

In Plaintiff's Response to State Farm's Motion for Summary Judgment, Plaintiff claims that the letter lists State Farm's assigned claim number of "59A820386" as the claim number. (Doc. 16 ¶ 5(b).) However, the letter lists the Nissan Quest Policy's number as the claim number. (Doc. 16-1 at 7.)

Per State Farm's request, the Court takes judicial notice of the records in the underlying state court case and the previous federal case to be discussed infra . See, e.g. , United States v. Jones , 29 F.3d 1549, 1553 (11th Cir. 1994) (internal quotations and citations omitted) ("It is recognized that a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Under Florida common law, "the civil remedy provided by § 624.155 did not exist for first-party insureds prior to the adoption of the civil remedy statute." Nowak v. Lexington Ins. Co. , 464 F.Supp.2d 1248, 1251-52 (S.D. Fla. 2006) (citing Talat , 753 So.2d at 1283 ).

Plaintiff also attempts to distinguish her case from Allstate Insurance Co. v. Clohessy , 32 F.Supp.2d 1328 (M.D. Fla. 1998). (Doc. 16 at 9.) In Clohessy , the defendants' bad faith counterclaim was dismissed because the defendants failed to notify the court in their complaint how they complied with the CRN requirements. Clohessy , 32 F.Supp.2d at 1333. Plaintiff highlights how she filed and served her CRN on State Farm and how her Complaint alleges details of her complying with the notice requirements. (Doc. 16 at 9.) The Court does not find this analysis persuasive because Defendant only utilizes Clohessy to state the general proposition that "the filing of a [CRN] is crucial to the procedural integrity of an action under chapter 624.155" (Doc. 7 at 7.) (emphasis in original) (citation omitted). Moreover, this analysis sheds little light on the ultimate issue in this case of whether Plaintiff can use a CRN filed under one policy to perfect a bad faith claim based on another policy.

Additionally, this is not a case involving a mere typographical error; instead, Plaintiff purposely chose to only file a CRN under the Nissan Quest Policy with the higher UM limits.

Section 624.155(3)(a) implicitly authorizes the filing of multiple CRNs by stating, "If the department returns a [CRN] for lack of specificity, the 60-day time period shall not begin until a proper notice is filed."

The Court acknowledges that the state court did not decide that Decedent should have been listed as the first named insured on the Honda Civic Policy and was covered by the Honda Civic Policy until April 11, 2017. However, Plaintiff filed her current action for bad faith under the Honda Civic Policy on September 6, 2017. (Doc. 2.) She had approximately five months between the state court's decision and filing the Complaint in the present action to submit a CRN under the Honda Civic Policy. Furthermore, Plaintiff chose to accept State Farm's April 1, 2013 $10,000 payment of UM limits under the Honda Civic Policy .

Unpublished opinions of the Eleventh Circuit constitute persuasive, not binding, authority. See 11th Cir. R. 36-2 and I.O.P. 6.

State Farm also argues that Plaintiff cannot bring a bad faith claim under the Nissan Quest Policy because the statute of limitations has expired. (Doc. 7 at 10 n.8) Given the Court's decision to grant summary judgment, the Court need not address this argument and will restrict this Order to only the determination of whether Plaintiff can bring its current bad faith claim under the Honda Civic Policy.